## MONGE v. CALIFORNIA

No. 97–6146.   Argued April 28, 1998—Decided June 26, 1998

722

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and KENNEDY, THOMAS, and BREYER, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 734. SCALIA, J., filed a dissenting opinion, in which SOUTER and GINSBURG, JJ., joined, *post*, p. 737.

*Cliff Gardner*, by appointment of the Court, 522 U. S. 1106, argued the cause and filed briefs for petitioner.

*David F. Glassman*, Deputy Attorney General of California, argued the cause for respondent. With him on the brief were *Daniel E. Lungren*, Attorney General, *George Williamson*, Chief Assistant Attorney General, *Carol Wendelin Pollack*, Senior Assistant Attorney General, *Susan D. Martynec*, Supervising Deputy Attorney General, and *Carl N. Henry*, Deputy Attorney General.

*Matthew D. Roberts* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Waxman, Acting Assistant Attorney General Keeney*, and *Deputy Solicitor General Dreeben*.\*

---

\**David M. Porter* and *Robert Weisberg* filed a brief for the National Association of Criminal Defense Lawyers urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the Commonwealth of Massachusetts et al. by *Scott Harshbarger*, Attorney General of Massachusetts, *Ellyn H. Lazar*, Assistant Attorney General, and *Dan Schweitzer*, and by the Attorneys General for their respective States as follows: *Bruce M. Botelho* of Alaska, *Winston Bryant* of Arkansas, *Gale A. Norton* of Colorado, *Richard Blumenthal* of Connecticut, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Thurbert E. Baker* of Georgia, *Alan G. Lance* of Idaho, *Jim Ryan* of Illinois, *Jeffrey A. Modisett* of Indiana, *Tom Miller* of Iowa, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.*, of Maryland, *Hubert H. Humphrey III* of Minnesota, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Peter Verniero* of New Jersey, *Dennis C. Vacco* of New York, *Michael F. Easley* of North Carolina, *Heidi Heitkamp* of North Dakota, *Betty D. Montgomery* of Ohio,

JUSTICE O'CONNOR delivered the opinion of the Court.

This case presents the question whether the Double Jeopardy Clause, which we have found applicable in the capital sentencing context, see *Bullington* v. *Missouri*, 451 U. S. 430 (1981), extends to noncapital sentencing proceedings. We hold that it does not, and accordingly affirm the judgment of the California Supreme Court.

I

Petitioner was charged under California law with one count of using a minor to sell marijuana, Cal. Health & Safety Code Ann. § 11361(a) (West 1991), one count of sale or transportation of marijuana, § 11360(a), and one count of possession of marijuana for sale, § 11359. In the information, the State also notified petitioner that it would seek to prove two sentence enhancement allegations: that petitioner had previously been convicted of assault and that he had served a prison term for that offense, see Cal. Penal Code Ann. §§ 245(a)(1), 667(e)(1), and 667.5 (West Supp. 1998).

Under California's "three-strikes" law, a defendant convicted of a felony who has two qualifying prior convictions for "serious felonies" receives a minimum sentence of 25 years to life; when the instant conviction was preceded by one serious felony offense, the court doubles a defendant's term of imprisonment. §§ 667(d)(1) and (e)(1)–(2). An assault conviction qualifies as a serious felony if the defendant either inflicted great bodily injury on another person or per-

---

W. A. Drew Edmondson of Oklahoma, Hardy Myers of Oregon, Mike Fisher of Pennsylvania, Jeffrey B. Pine of Rhode Island, Charlie Condon of South Carolina, Mark Barnett of South Dakota, John Knox Walkup of Tennessee, Dan Morales of Texas, William H. Sorrell of Vermont, Mark L. Earley of Virginia, Darrell V. McGraw, Jr., of West Virginia, and William U. Hill of Wyoming; and for the Criminal Justice Legal Foundation by Kent S. Scheidegger and Charles L. Hobson.

J. Bradley O'Connell and Jeffrey E. Thoma filed a brief for the California Public Defenders Association as amicus curiae.

sonally used a dangerous or deadly weapon during the assault. §§ 1192.7(c)(8) and (23). According to California law, a number of procedural safeguards surround the assessment of prior conviction allegations: Defendants may invoke the right to a jury trial, the right to confront witnesses, and the privilege against self-incrimination; the prosecution must prove the allegations beyond a reasonable doubt; and the rules of evidence apply. See, e. g., 16 Cal. 4th 826, 833–834, 941 P. 2d 1121, 1126 (1997).

Here, petitioner waived his right to a jury trial on the sentencing issues, and the court granted his motion to bifurcate the proceedings. After a jury entered a guilty verdict on the substantive offenses, the truth of the prior conviction allegations was argued before the court. The prosecutor asserted that petitioner had personally used a stick in committing the assault, see Tr. 189–190 (June 12, 1995), App. 12, but introduced into evidence only a prison record demonstrating that petitioner had been convicted of assault with a deadly weapon and had served a prison term for the offense, see People's Exh. 1 (filed June 12, 1995), App. 3–6. The trial court found both sentencing allegations true and imposed an 11-year term of imprisonment: 5 years on count one, doubled to 10 under the three-strikes law, and a 1-year enhancement for the prior prison term. The court also stayed a 3-year sentence on count 2 and ordered the 2-year sentence on count 3 to be served concurrently.

Petitioner appealed, and the California Court of Appeal, on its own motion, requested briefing as to whether sufficient evidence supported the finding that petitioner had a qualifying prior conviction. The State conceded that the record of the sentencing proceedings did not contain proof beyond a reasonable doubt that petitioner had personally inflicted great bodily injury or used a deadly weapon, but requested another opportunity to prove the allegations on remand. See Respondent's Supplemental Brief (Cal. App.), pp. 2–3, App. 33–35. The court, however, determined both that the

evidence was insufficient to trigger the sentence enhancement and that a remand for retrial on the allegation would violate double jeopardy principles.

The California Supreme Court reversed the Court of Appeal's ruling that the Double Jeopardy Clause bars retrial of prior conviction allegations. The three-justice plurality noted this Court's traditional reluctance to apply double jeopardy principles to sentencing proceedings and concluded that the exception recognized in *Bullington, supra,* did not apply. In *Bullington,* we held that a capital defendant who had received a life sentence during a penalty phase that bore "the hallmarks of [a] trial on guilt or innocence" could not be resentenced to death upon retrial following appeal. Here, the plurality acknowledged that California's proceedings to assess the truth of prior conviction allegations have the hallmarks of a trial, but it found *Bullington* distinguishable on several grounds. First, the plurality cited statements by this Court indicating that *Bullington*'s rationale is confined to the unique circumstances of capital cases. See 16 Cal. 4th, at 836–837, 941 P. 2d, at 1128 (citing *Caspari* v. *Bohlen,* 510 U. S. 383, 392 (1994); *Pennsylvania* v. *Goldhammer,* 474 U. S. 28, 30 (1985) *(per curiam)*). The plurality also reasoned that capital sentencing procedures are mandated by the Supreme Court's interpretation of the Federal Constitution, whereas the procedural protections accorded in California's sentence enhancement proceedings rest on statutory grounds. 16 Cal. 4th, at 837, 941 P. 2d, at 1128. The plurality then cited the breadth and subjectivity of the factual determinations at issue in the capital sentencing context, as well as the financial and emotional burden that the penalty phase of a capital case places on a defendant. *Id.,* at 838–839, 941 P. 2d, at 1129. Finally, the plurality explained that a qualifying strike involves a finding of a particular "status" that may be made from the record of the prior conviction, while the jury's sentencing determination in a capital case "depends on the specific facts of the defendant's present

crime, as well as an overall assessment of the defendant's character." *Id.*, at 839, 941 P. 2d, at 1130.

The concurring justice who provided the fourth vote to reverse noted that retrial on a prior conviction allegation would not require the factfinder to reevaluate the evidence underlying the substantive offense. Accordingly, she concluded that a second attempt at proving the allegation would not unfairly subject a defendant to the risk of repeated prosecution within the meaning of the Double Jeopardy Clause. *Id.*, at 846–847, 941 P. 2d, at 1134–1135 (Brown, J., concurring). Three justices dissented, asserting that under *Bullington*'s rationale, the Double Jeopardy Clause precludes successive efforts to prove prior conviction allegations. *Id.*, at 847, 941 P. 2d, at 1135 (opinion of Werdegar, J.).

The California Supreme Court's decision deepened a conflict among the state courts as to *Bullington*'s application to noncapital sentencing. Compare, *e. g.*, *State* v. *Hennings*, 100 Wash. 2d 379, 670 P. 2d 256 (1983), with *People* v. *Levin*, 157 Ill. 2d 138, 623 N. E. 2d 317 (1993). Prior to this Court's determination that the nonretroactivity rule of *Teague* v. *Lane*, 489 U. S. 288 (1989), would bar the extension of *Bullington* to noncapital sentencing proceedings on federal habeas review, see *Caspari, supra*, the Federal Courts of Appeals had reached disparate conclusions as well. Compare, *e. g.*, *Briggs* v. *Procunier*, 764 F. 2d 368, 371 (CA5 1985), with *Denton* v. *Duckworth*, 873 F. 2d 144 (CA7), cert. denied, 493 U. S. 941 (1989). In view of the conflicting authority on the issue, we granted certiorari, 522 U. S. 1072 (1998).

## II

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." We have previously held that it protects against successive prosecu-

tions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. See *North Carolina* v. *Pearce*, 395 U. S. 711, 717 (1969). Historically, we have found double jeopardy protections inapplicable to sentencing proceedings, see *Bullington*, 451 U. S., at 438, because the determinations at issue do not place a defendant in jeopardy for an "offense," see, *e. g., Nichols* v. *United States*, 511 U. S. 738, 747 (1994) (noting that repeat-offender laws " 'penaliz[e] only the last offense committed by the defendant' "). Nor have sentence enhancements been construed as additional punishment for the previous offense; rather, they act to increase a sentence "because of the manner in which [the defendant] committed the crime of conviction." *United States* v. *Watts*, 519 U. S. 148, 154 (1997) *(per curiam);* see also *Witte* v. *United States*, 515 U. S. 389, 398–399 (1995). An enhanced sentence imposed on a persistent offender thus "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes" but as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Gryger* v. *Burke*, 334 U. S. 728, 732 (1948); cf. *Moore* v. *Missouri*, 159 U. S. 673, 678 (1895) ("[T]he State may undoubtedly provide that persons who have been before convicted of crime may suffer severer punishment for subsequent offences than for a first offence").

JUSTICE SCALIA insists that the recidivism enhancement the Court confronts here in fact constitutes an element of petitioner's offense. His dissent addresses an issue that was neither considered by the state courts nor discussed in petitioner's brief before this Court. In any event, JUSTICE SCALIA acknowledges, *post,* at 741, that his argument is squarely foreclosed by our decision in *Almendarez-Torres* v. *United States*, 523 U. S. 224 (1998). One could imagine circumstances in which fundamental fairness would require that a particular fact be treated as an element of the offense, see *post,* at 738 (SCALIA, J., dissenting), but there are also

cases in which fairness calls for defining a fact as a sentencing factor. A defendant might not, for example, wish to simultaneously profess his innocence of a drug offense and dispute the amount of drugs allegedly involved. Cf. *Gregg* v. *Georgia*, 428 U. S. 153, 190–195 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.) (discussing the benefits of bifurcated proceedings in capital cases). In part for that reason, the Court has rejected an absolute rule that an enhancement constitutes an element of the offense any time that it increases the maximum sentence to which a defendant is exposed. See *Almendarez-Torres, supra.* Under California law, the maximum sentence applicable to a first offender who uses a minor to sell drugs is 7 years, and a judge may double that sentence to 14 years where the offender has previously been convicted of a qualifying felony. See Cal. Health & Safety Code Ann. § 11361(a) (West 1991). That increase falls well within the range that the Court has found to be constitutionally permissible. See *Almendarez-Torres, supra* (upholding a potential 18-year increase to a 2-year sentence). Thus, the sentencing determination here did not place petitioner in jeopardy for an "offense."

Sentencing decisions favorable to the defendant, moreover, cannot generally be analogized to an acquittal. We have held that where an appeals court overturns a conviction on the ground that the prosecution proffered insufficient evidence of guilt, that finding is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial. See *Burks* v. *United States*, 437 U. S. 1, 16 (1978). Where a similar failure of proof occurs in a sentencing proceeding, however, the analogy is inapt. The pronouncement of sentence simply does not "have the qualities of constitutional finality that attend an acquittal." *United States* v. *DiFrancesco*, 449 U. S. 117, 134 (1980); see also *Bullington, supra,* at 438 ("The imposition of a particular sentence usually is not regarded as an 'acquittal' of any more severe sentence that could have been imposed").

The Double Jeopardy Clause "does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *DiFrancesco*, 449 U. S., at 137. Consequently, it is a "well-established part of our constitutional jurisprudence" that the guarantee against double jeopardy neither prevents the prosecution from seeking review of a sentence nor restricts the length of a sentence imposed upon retrial after a defendant's successful appeal. See *id.*, at 135; *Pearce, supra,* at 720; see also *Stroud* v. *United States,* 251 U. S. 15, 18 (1919) (despite a harsher sentence on retrial, the defendant was not "placed in second jeopardy within the meaning of the Constitution").

Our opinion in *Bullington* established a "narrow exception" to the general rule that double jeopardy principles have no application in the sentencing context. See *Schiro* v. *Farley,* 510 U. S. 222, 231 (1994). In *Bullington,* a capital defendant had received a sentence of life imprisonment from the original sentencing jury. The defendant subsequently obtained a new trial on the ground that the court had permitted prospective women jurors to claim automatic exemption from jury service in violation of the Sixth and Fourteenth Amendments. 451 U. S., at 436. When the State announced its intention to seek the death penalty again, the defendant alleged a double jeopardy violation. We determined that the first jury's deliberations bore the "hallmarks of the trial on guilt or innocence," *id.*, at 439, because the jury was presented with a choice between two alternatives together with standards to guide their decision, the prosecution undertook the burden of establishing facts beyond a reasonable doubt, and the evidence was introduced in a separate proceeding that formally resembled a trial, *id.*, at 438. In light of the jury's binary determination and the heightened procedural protections, we found the proceeding distinct from traditional sentencing, in which "it is impossible to conclude that a sentence less than the statutory maximum 'con-

stitute[s] a decision to the effect that the government has failed to prove its case.'" *Id.*, at 443 (quoting *Burks, supra,* at 15).

Moreover, we reasoned that the "embarrassment, expense and ordeal" as well as the "anxiety and insecurity" that a capital defendant faces "are at least equivalent to that faced by any defendant at the guilt phase of a criminal trial." 451 U. S., at 445. And we cited the "unacceptably high risk" that repeated attempts to persuade a jury to impose the death penalty would lead to an erroneous capital sentence. *Id.*, at 445–446. We later extended the rule set forth in *Bullington* to a capital sentencing scheme in which the judge, as opposed to a jury, had initially determined that a life sentence was appropriate. See *Arizona v. Rumsey,* 467 U. S. 203, 209–210 (1984).

Petitioner contends that the rationale for imposing a double jeopardy bar in *Bullington* and *Rumsey* applies with equal force to California's proceedings to determine the truth of a prior conviction allegation. Like the Missouri capital sentencing scheme at issue in *Bullington,* petitioner argues, the sentencing proceedings here have the "hallmarks of a trial on guilt or innocence" because the sentencer makes an objective finding as to whether the prosecution has proved a historical fact beyond a reasonable doubt. The determination whether a defendant in fact has qualifying prior convictions may be distinguished, petitioner maintains, from the normative decisions typical of traditional sentencing. In petitioner's view, once a defendant has obtained a favorable finding on such an issue, the State should not be permitted to retry the allegation.

Even assuming, however, that the proceeding on the prior conviction allegation has the "hallmarks" of a trial that we identified in *Bullington,* a critical component of our reasoning in that case was the capital sentencing context. The penalty phase of a capital trial is undertaken to assess the gravity of a particular offense and to determine whether it

warrants the ultimate punishment; it is in many respects a continuation of the trial on guilt or innocence of capital murder. "It is of vital importance" that the decisions made in that context "be, and appear to be, based on reason rather than caprice or emotion." *Gardner* v. *Florida*, 430 U. S. 349, 358 (1977). Because the death penalty is unique "in both its severity and its finality," *id.*, at 357, we have recognized an acute need for reliability in capital sentencing proceedings. See *Lockett* v. *Ohio*, 438 U. S. 586, 604 (1978) (opinion of Burger, C. J.) (stating that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed"); see also *Strickland* v. *Washington*, 466 U. S. 668, 704 (1984) (Brennan, J., concurring in part and dissenting in part) ("[W]e have consistently required that capital proceedings be policed at all stages by an especially vigilant concern for procedural fairness and for the accuracy of factfinding").

That need for reliability accords with one of the central concerns animating the constitutional prohibition against double jeopardy. As the Court explained in *Green* v. *United States*, 355 U. S. 184 (1957), the Double Jeopardy Clause prevents States from "mak[ing] repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Id.*, at 187–188. Indeed, we cited the heightened interest in accuracy in the *Bullington* decision itself. We noted that in a capital sentencing proceeding, as in a criminal trial, "'the interests of the defendant [are] of such magnitude that . . . they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment.'" 451 U. S., at 441 (quoting *Addington* v. *Texas*, 441 U. S. 418, 423–424 (1979)).

Moreover, we have suggested in earlier cases that *Bullington*'s rationale is confined to the "unique circumstances of

a capital sentencing proceeding." *Caspari,* 510 U. S., at 392; see also *Goldhammer,* 474 U. S., at 30 ("[T]he decisions of this Court 'clearly establish that a sentenc[ing in a noncapital case] does not have the qualities of constitutional finality that attend an acquittal'") (quoting *DiFrancesco,* 449 U. S., at 134). In addition, we have cited *Bullington* as an example of the heightened procedural protections accorded capital defendants. See *Strickland, supra,* at 686–687 ("A capital sentencing proceeding . . . is sufficiently like a trial in its adversarial format and in the existence of standards for decision, see *[Bullington],* that counsel's role in the proceeding is comparable to counsel's role at trial").

In an attempt to minimize the relevance of the death penalty context, petitioner argues that the application of double jeopardy principles turns on the nature rather than the consequences of the proceeding. For example, petitioner notes that *Bullington* did not overrule the Court's decision in *Stroud* v. *United States,* 251 U. S. 15 (1919)—which found the double jeopardy bar inapplicable to a particular capital sentencing proceeding—but rather distinguished it on the ground that the proceeding at issue did not bear the hallmarks of a trial on guilt or innocence. *Stroud* predates our decisions in *Furman* v. *Georgia,* 408 U. S. 238 (1972) *(per curiam),* and *Gregg* v. *Georgia,* 428 U. S. 153 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.); it was decided at a time when "no significant constitutional difference between the death penalty and lesser punishments for crime had been expressly recognized by this Court." See *Gardner, supra,* at 357 (opinion of STEVENS, J.). Consequently, the capital sentencing procedures at issue in *Stroud* did not resemble a trial, and the Court confronted a different question in that case. The holding of *Bullington* turns on *both* the trial-like proceedings at issue and the severity of the penalty at stake. That the Court focused on the absence of procedural safeguards in distinguishing an earlier capital

case does not mean that the *Bullington* decision rests on a purely procedural rationale.

In our death penalty jurisprudence, moreover, the nature and the consequences of capital sentencing proceedings are intertwined. We have held that "in capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson* v. *North Carolina*, 428 U. S. 280, 304 (1976) (plurality opinion) (citation omitted). Where noncapital sentencing proceedings contain trial-like protections, that is a matter of legislative grace, not constitutional command. Many States have chosen to implement procedural safeguards to protect defendants who may face dramatic increases in their sentences as a result of recidivism enhancements. We do not believe that because the States have done so, we are compelled to extend the double jeopardy bar. Indeed, were we to apply double jeopardy here, we might create disincentives that would diminish these important procedural protections.

\* \* \*

We conclude that *Bullington*'s rationale is confined to the unique circumstances of capital sentencing and that the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the noncapital sentencing context. Accordingly, the judgment of the California Supreme Court is affirmed.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceed-

ing." *Burks* v. *United States*, 437 U. S. 1, 11 (1978).[1] Today, the Court ignores this cardinal principle. In this case, the prosecution attempted to prove that petitioner had previously been convicted of a qualifying felony. If the prosecution had proved this fact, petitioner would have automatically been sentenced to an additional five years in prison.[2] The prosecution, however, failed to prove its case.[3] Consequently, the Double Jeopardy Clause prohibits a "'second bite at the apple.'" *Id.*, at 17.

Until today, the Court has never held that a retrial or resentencing is permissible when the evidence in the first proceeding was *insufficient;* instead, the Court has consistently drawn a line between insufficiency of the evidence and *legal* errors that infect the first proceeding.[4] In his unanimous

---

[1] See also, *e. g., Poland* v. *Arizona,* 476 U. S. 147, 152 (1986) (reprosecution or resentencing prohibited whenever "a jury agrees or an appellate court decides that the prosecution has not proved its case" (internal quotation marks omitted)); cf. *Schiro* v. *Farley,* 510 U. S. 222, 231–232 (1994) ("The state is entitled to 'one fair opportunity' to prosecute a defendant, . . . and that opportunity extends not only to prosecution at the guilt phase, but also to present evidence at an ensuing sentencing proceeding").

[2] The finding of this fact would have also increased petitioner's sentencing range. See Cal. Health & Safety Code Ann. § 11361(a) (West 1991). This case, then, is factually different from *Caspari* v. *Bohlen,* 510 U. S. 383, 386–387 (1994), as the factual finding in that case did not automatically increase the respondent's sentence or affect his sentencing range.

[3] The California appellate court concluded that "[t]here was insufficient evidence that [petitioner] suffered a prior felony conviction" within the meaning of the "three-strikes" law. App. 41 (emphasis omitted). It is immaterial, of course, that this determination was made by an appellate court rather than by the trial judge or jury. *Burks* v. *United States,* 437 U. S. 1, 11 (1978). The State concedes that the evidence was insufficient.

[4] See, *e. g., Poland,* 476 U. S., at 154 ("[The Arizona Supreme Court] did not hold that the prosecution had failed to prove its case . . . . Indeed, the court clearly indicated that there had been no such failure by remarking that 'the trial court mistook the law when it did not find that the defendants [satisfied the disputed aggravator]'"); *United States* v. *DiFrancesco,* 449 U. S. 117, 141 (1980) ("The federal statute specifies that the

opinion for the Court in *Burks* v. *United States*, Chief Justice Burger emphasized this critical difference, *i. e.*, "between reversals due to trial error and those resulting from evidentiary insufficiency." *Id.*, at 15. He specifically noted "that the failure to make this distinction has contributed substantially to the present state of conceptual confusion existing in this area of the law," *ibid.*, and concluded that in order to hold, as we did, "that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient," it was necessary to overrule several prior cases, *id.*, at 18. The Court's opinion today reflects the same failure to recognize the critical importance of this distinction.

I agree that California's decision to "implement procedural safeguards to protect defendants who may face dramatic increases in their sentences as a result of recidivism enhancements," *ante*, at 734, should not create a constitutional obligation that would not otherwise exist. But the fact that so many States have done so—not just recently, but for many years[5]—is powerful evidence that they were simply responding to the traditional understanding of fundamental fairness that produced decisions such as *In re Winship*, 397 U. S. 358 (1970),[6] and *Mullaney* v. *Wilbur*, 421 U. S. 684

Court of Appeals may increase the sentence only if the trial court has abused its discretion or employed unlawful procedures or made clearly erroneous findings. The appellate court thus is empowered to correct only a *legal* error" (emphasis added)); *Bozza* v. *United States*, 330 U. S. 160, 166–167 (1947) (error of law that infects a sentence may be corrected on appeal).

[5] See, *e. g.*, cases cited in Annot., 58 A. L. R. 59–62 (1929); cases cited in *Almendarez-Torres* v. *United States*, 523 U. S. 224, 256–257 (1998) (SCALIA, J., dissenting); see also *ante*, at 734 ("Many States have chosen to implement procedural safeguards to protect defendants who may face dramatic increases in their sentences as a result of recidivism enhancements").

[6] In *Winship*, despite the fact that the Court had never held "that proof beyond a reasonable doubt is either expressly or impliedly commanded by any provision of the Constitution," 397 U. S., at 377 (Black, J., dissenting), the traditional importance of that standard that dated "at least from our

(1975).[7] It is this same traditional understanding of fundamental fairness—dating back centuries to the common-law plea of *autrefois acquit* and buttressed by a special interest in finality—that undergirds the Double Jeopardy Clause.[8]

I respectfully dissent.

JUSTICE SCALIA, with whom JUSTICE SOUTER and JUSTICE GINSBURG join, dissenting.

I agree with the Court's determination that *Bullington* v. *Missouri*, 451 U. S. 430 (1981), should not be extended, and its conclusion that the Double Jeopardy Clause does not apply to noncapital sentencing proceedings. I do not, however, agree with the Court's assumption that only a sentencing proceeding was at issue here.

Like many other guarantees in the Bill of Rights, the Double Jeopardy Clause makes sense only against the backdrop of traditional principles of Anglo-American criminal law. In that tradition, defendants are charged with "offence[s]." A criminal "offence" is composed of "elements," which are factual components that must be proved by the state beyond a reasonable doubt and submitted (if the defendant so desires) to a jury. Conviction of an "offence" renders the defendant eligible for a range of potential punishments, from which a sentencing authority (judge or jury) then selects the most

___

early years as a Nation," *id.*, at 361, justified our conclusion "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," *id.*, at 364.

[7] In *Mullaney*, we unanimously extended the protection of *Winship* to determinations that go not to a defendant's guilt or innocence, but simply to the length of his sentence. 421 U. S., at 697–698; see also *Almendarez-Torres*, 523 U. S., at 251–252 (SCALIA, J., dissenting).

[8] JUSTICE SCALIA accurately characterizes the potential consequences of today's decision as "sinister." *Post*, at 739. It is not, however, California that has taken "the first steps" down the road the Court follows today. It was the Court's decision in *McMillan* v. *Pennsylvania*, 477 U. S. 79 (1986).

appropriate. That sentencer often considers new factual issues and additional evidence under much less demanding proof requirements than apply at the conviction stage. The fundamental distinction between facts that are *elements* of a criminal offense and facts that go only to the *sentence* provides the foundation for our entire double jeopardy jurisprudence—including the "same elements" test for determining whether two "offence[s]" are "the same," see *Blockburger* v. *United States*, 284 U. S. 299 (1932), and the rule (at issue here) that the Clause protects an expectation of finality with respect to offences but not sentences. The same distinction also delimits the boundaries of other important constitutional rights, like the Sixth Amendment right to trial by jury and the right to proof beyond a reasonable doubt.

I do not believe that that distinction is (as the Court seems to assume) simply a matter of the label affixed to each fact by the legislature. Suppose that a State repealed all of the violent crimes in its criminal code and replaced them with only one offense, "knowingly causing injury to another," bearing a penalty of 30 days in prison, but subject to a series of "sentencing enhancements" authorizing additional punishment up to life imprisonment or death on the basis of various levels of *mens rea*, severity of injury, and other surrounding circumstances. Could the State then grant the defendant a jury trial, with requirement of proof beyond a reasonable doubt, solely on the question whether he "knowingly cause[d] injury to another," but leave it for the judge to determine by a preponderance of the evidence whether the defendant acted intentionally or accidentally, whether he used a deadly weapon, and whether the victim ultimately died from the injury the defendant inflicted? If the protections extended to criminal defendants by the Bill of Rights can be so easily circumvented, most of them would be, to borrow a phrase from Justice Field, "vain and idle enactment[s], which accomplished nothing, and most unnecessarily excited Con-

gress and the people on [their] passage." *Slaughter-House Cases*, 16 Wall. 36, 96 (1873).[1]

Although California's system is not nearly that sinister, it takes the first steps down that road. The California Code is full of "sentencing enhancements" that look exactly like separate crimes, and that expose the defendant to additional maximum punishment. Cal. Penal Code § 12022.5 (1982) is typical: "[A]ny person who personally uses a firearm in the commission or attempted commission of a felony shall . . . be punished by an additional term of imprisonment in the state prison for three, four, or five years." Compare that provision with its federal counterpart, 18 U. S. C. § 924(c)(1), which provides that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years." Everyone agrees that 18 U. S. C. § 924(c)(1) describes a separate crime entitling those who are charged to the constitutional protections that accompany criminal convictions. Indeed, the undisputed fact that each of the elements of § 924(c)(1) must be

---

[1] The Court suggests that "fundamental fairness" will sometimes call for treating a particular fact as a sentencing factor rather than an element, even if it increases the defendant's maximum sentencing exposure, because "[a] defendant might not, for example, wish to simultaneously profess his innocence of a drug offense and dispute the amount of drugs allegedly involved." *Ante*, at 729. Even if I agreed that putting a defendant to such a choice would be fundamentally unfair, I see no reason to assume that defendants would be eager to pursue such a strategy at the cost of forfeiting their traditional rights to jury trial and proof beyond a reasonable doubt. But in any event, there is no need to contemplate such Faustian bargains. If simultaneous consideration of two elements *would* be genuinely prejudicial to the defendant (as, for example, when one of the elements involves the defendant's prior criminal history), the trial can be bifurcated without sacrificing jury factfinding in the second phase. See *Almendarez-Torres*, 523 U. S. 224, 261, 269 (1998) (SCALIA, J., dissenting).

submitted to a jury and found beyond a reasonable doubt, combined with the fact that many courts were mistaken as to what those elements consisted of, has created considerable juridical chaos in recent years. See, e. g., *Bailey* v. *United States*, 516 U. S. 137 (1995); *Bousley* v. *United States*, 523 U. S. 614 (1998). Perhaps Congress should have taken a lesson from the California Legislature, which (if my worst fears about today's holding are justified) may have stumbled upon the El Dorado sought by many in vain since the beginning of the Republic: a means of dispensing with inconvenient constitutional "rights." For now, California has used this gimmick only to eviscerate the Double Jeopardy Clause; it still provides a right to notice, jury trial, and proof beyond a reasonable doubt on "enhancement" allegations as a matter of state law. But if the Court is right today, those protections could be withdrawn tomorrow.

Earlier this Term, in *Almendarez-Torres* v. *United States*, 523 U. S. 224 (1998), I discussed our precedents bearing on this issue and concluded that it was a grave and doubtful question whether the Constitution permits a fact that increases the maximum sentence to which a defendant is exposed to be treated as a sentencing enhancement rather than an element of a criminal offense. See *id.*, at 260 (dissenting opinion). I stopped short of answering that question, because I thought the doctrine of constitutional doubt required us to interpret the federal statute at issue as setting forth an element rather than an enhancement, thereby avoiding the problem. *Ibid.* Since the present case involves a state statute already authoritatively construed as an enhancement by the California Supreme Court, I must now answer the constitutional question. Petitioner Monge was convicted of the crime of using a minor to sell marijuana, which carries a *maximum* possible sentence of seven years in prison under California law. See California Health & Safety Code Ann. § 11361(a) (West 1991). He was later sentenced to *eleven* years in prison, however, on the basis of

several additional facts that California and the Court have chosen to label "sentence enhancement allegations." However California chooses to divide and label its criminal code, I believe that for federal constitutional purposes those extra four years are attributable to conviction of a new crime.[2] Monge was functionally acquitted of that crime when the California Court of Appeal held that the evidence adduced at trial was insufficient to sustain the trial court's "enhancement" findings, see *Burks* v. *United States*, 437 U. S. 1, 18 (1978). Giving the State a second chance to prove him guilty of that same crime would violate the very core of the double jeopardy prohibition.

That disposition would contradict, of course, the Court's holding in *Almendarez-Torres* that "recidivism" findings do not have to be treated as elements of the offense, *even if* they increase the maximum punishment to which the defendant is exposed. That holding was in my view a grave constitutional error affecting the most fundamental of rights. I note, in any event, that *Almendarez-Torres* left open the question whether "enhancements" that increase the maximum sentence and that do not involve the defendant's prior criminal history are valid. That qualification is an implicit limitation on the Court's holding today.

I respectfully dissent.

---

[2] The Court contends that this issue "was neither considered by the state courts nor discussed in petitioner's brief before this Court." *Ante*, at 728. But Monge has argued consistently that reconsideration of the enhancement issue would violate the Double Jeopardy Clause. He did not explicitly contend that the enhancement was in reality an element of the offense with which he was charged, but I believe that was fairly included within the argument he did make. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen* v. *Kemper Financial Services, Inc.*, 500 U. S. 90, 99 (1991). See also *United States Nat. Bank of Ore.* v. *Independent Ins. Agents of America, Inc.*, 508 U. S. 439, 446 (1993).