FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE DEC 13 2018

Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Dec 13, 2018

Susan L. Carl

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 95454-2 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| DARCUS DEWAYNE ALLEN[†] | ) | |
| | ) | Filed:   DEC 1 3 2018 |
| Respondent. | ) | |
| | ) | |

YU, J. — This case asks whether the aggravating circumstances listed in RCW 10.95.020 are "elements" of the offense of aggravated first degree murder for purposes of the Fifth Amendment's double jeopardy clause. U.S. CONST. amend. V. Respondent Dorcus Dewayne Allen was convicted of four counts of first degree murder but acquitted of two RCW 10.95.020 aggravating circumstances on each count. We later vacated Allen's convictions and remanded for a new trial. *State v. Allen*, 182 Wn.2d 364, 387, 341 P.3d 268 (2015) (*Allen* I).

---

[†] The case caption spells the defendant's first name as Darcus while the defendant's briefing spells his first name as Dorcus. There has been no motion to amend the case caption, but we use the spelling from the defendant's briefing in the body of this opinion.

The question before us now is whether Allen can be tried a second time on the RCW 10.95.020 aggravating circumstances. The trial court ruled that he cannot, and the Court of Appeals agreed. We hold that retrial on the aggravating circumstances is barred by double jeopardy principles and thus affirm.[1]

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 2009, Maurice Clemmons shot and killed four Lakewood police officers. Allen drove Clemmons to and from the crime scene. The factual details are recounted in *Allen* I and need not be repeated here. *Id.* at 369-70.

Allen was charged as an accomplice with four counts of aggravated murder in the first degree pursuant to RCW 10.95.020, which provides that "[a] person is guilty of aggravated first degree murder, a class A felony, if he or she commits first degree murder as defined by RCW 9A.32.030(1)(a) . . . and one or more of [14 listed] aggravating circumstances exist." The information charged Allen with two aggravating circumstances for each count:

> (1) that the victim was a law enforcement officer who was performing
> [his or her] official duties at the time of the act resulting in death, and
> the victim was known or reasonably should have been known by the
> defendant to be such at the time of the killing; and/or (2) that there
> was more than one victim and the murders were part of a common
> scheme or plan or the result of a single act of the defendant; contrary
> to RCW 10.95.020(1) and 10.95.020(10).

---

[1] Allen also argues that collateral estoppel provides an alternative basis for holding that he cannot be retried on the aggravating circumstances. We decline to consider this argument because it was not raised below. RAP 2.5(a).

Clerk's Papers (CP) at 1-3.[2] If the jury found that either one of the aggravating circumstances existed, the minimum penalty for each first degree murder conviction would increase from a term of years to mandatory life imprisonment without the possibility of release or parole.[3] Former RCW 10.95.030(1) (1993).

At the close of trial, the jury was instructed to separately consider each of the four counts of murder in the first degree and to return a verdict of guilty or not guilty on each count. The jury was also given special verdict forms related to each count and was instructed to fill these forms out only if it found Allen guilty of the related murder counts. The special verdict forms read as follows:

> We, the jury, having found the defendant guilty of premeditated Murder in the First Degree on verdict form [I-IV], return a special verdict by answering as follows as to Count [I-IV]:
>
> QUESTION #1: Has the State proven the existence of the following aggravating circumstance beyond a reasonable doubt?
>
>> The victim was a law enforcement officer who was performing his or her official duties at the time of the act resulting in death and the victim was known or reasonably should have been known by the defendant to be such at the time of the killing.
>
> ANSWER#1: _____      (Write "yes" or "no." "Yes" requires unanimous agreement)

---

[2] On each count, Allen was also charged with a firearm enhancement and an additional aggravating circumstance pursuant to RCW 9.94A.535(3)(v). These additional aggravators are not before us.

[3] Aggravated first degree murder pursuant to RCW 10.95.020 was also punishable by death, but the State did not seek the death penalty. Former RCW 10.95.030(2) (1993).

3

QUESTION #2: Has the State proven the existence of the following aggravating circumstance beyond a reasonable doubt?

There was more than one person murdered and the murders were part of a common scheme or plan or the result of a single act of the person.

ANSWER#2: _____ (Write "yes" or "no." "Yes" requires unanimous agreement)

CP at 35-38. The presiding juror wrote "no" in the blank next to each answer and circled "no." *Id.* After reading each verdict and special verdict form into the record, the trial court polled the jury individually, asking each juror, "Is this your verdict?" and "Is it the verdict of the jury?" *Id.* at 148-50. Each juror answered "yes" to each question. *Id.* Allen was sentenced to 420 years in prison.

On review, this court vacated Allen's convictions due to prosecutorial misconduct and remanded for a new trial. *Allen* I, 182 Wn.2d at 387. On remand, the State filed the same charges as in the first trial, including the same RCW 10.95.020 aggravating circumstances. The trial court granted Allen's motion to dismiss the aggravating circumstances on double jeopardy grounds and denied the State's motion for reconsideration.

The Court of Appeals affirmed on discretionary interlocutory review, holding that the "State cannot retry Allen on the aggravating circumstances for which a jury found a lack of proof." *State v. Allen*, 1 Wn. App. 2d 774, 787, 407

4

P.3d 1166 (2017). We granted the State's petition for review. *State v. Allen*, 190 Wn.2d 1007, 414 P.3d 575 (2018).

## ISSUES

A. Did the jury in Allen's first trial unanimously acquit him of both RCW 10.95.020 aggravating circumstances?

B. If Allen was acquitted on the aggravating circumstances, does the prohibition on double jeopardy bar a retrial on those aggravating circumstances?

## ANALYSIS

A. Any ambiguity as to whether the jury unanimously acquitted Allen of the two aggravating circumstances was cured when the judge polled the jury

Both the United States and Washington Constitutions prohibit successive prosecutions for an offense on which the defendant has been acquitted. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *Bravo-Fernandez v. United States*, ___ U.S. ___, 137 S. Ct. 352, 357, 196 L. Ed. 2d 242 (2016); *State v. Guzman Nuñez*, 174 Wn.2d 707, 717 n.4, 285 P.3d 21 (2012). Before we can determine whether Allen may be retried on the aggravating circumstances, we must determine whether he was acquitted of them at his first trial. The trial court and Court of Appeals determined that he was. We agree.

At the time of Allen's trial, our precedent held that if a jury did not unanimously find that the State had proved an RCW 10.95.020 aggravating circumstance, the defendant was acquitted of that aggravating circumstance. *State*

*v. Goldberg*, 149 Wn.2d 888, 894, 72 P.3d 1083 (2003). This "nonunanimity rule" was later overruled in *Guzman Nuñez*, which held that acquittal of aggravating circumstances requires jury unanimity. 174 Wn.2d at 718-19. But *Guzman Nuñez* was decided after Allen's trial was completed. Therefore, in accordance with then-controlling precedent, the special verdict forms used in Allen's trial required jury unanimity only in order to answer "yes" on the aggravating circumstances. The special verdict forms did not require jury unanimity in order to answer "no." We must determine if the jury was nonetheless unanimous in finding that the State failed to prove the RCW 10.95.020 aggravating circumstances.

Viewed in isolation, the "no" answer on the special verdict forms could be interpreted in two ways: (a) the jury unanimously answered "no" or (b) the jury answered "no" because they could not unanimously answer "yes." However, when polled by the trial court, each juror affirmed that the "no" verdicts were his or her own verdicts and the verdicts of the jury. Such individual jury polling is generally evidence of jury unanimity. *State v. Lamar*, 180 Wn.2d 576, 587, 327 P.3d 46 (2014).

The State contends that the jurors might have interpreted both questions as asking the same thing: "Do you unanimously agree that this was not a unanimous

'yes'"?[4] We disagree. It is unlikely that an ordinary juror would be confused in this way, and there is no indication of such confusion in the record. Thus, we affirm that the jury unanimously acquitted Allen of both aggravating circumstances at his first trial.

B.     The prohibition on double jeopardy bars retrial of the RCW 10.95.020
        aggravating circumstances

Because Allen was unanimously acquitted of the RCW 10.95.020 aggravating circumstances at his first trial, we must now determine whether the constitutional prohibition on double jeopardy bars a retrial on these aggravating circumstances. Outside of the death penalty context, the double jeopardy clause applies only to offenses, not sentences. *Bullington v. Missouri*, 451 U.S. 430, 438, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981). Therefore, the critical question is whether the RCW 10.95.020 aggravating circumstances are "elements" of the "offense" of aggravated first degree murder in a noncapital case for double jeopardy purposes.

We have previously held that RCW 10.95.020 aggravating circumstances "are 'aggravation of penalty' factors which enhance the penalty for the offense, and are not elements of a crime as such." *State v. Kincaid*, 103 Wn.2d 304, 307,

---

[4] Wash. Supreme Court oral argument, *State v. Allen*, No. 95454-2 (Oct. 18, 2018), at 12 min., 41 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

692 P.2d 823 (1985). As a result, we have previously stated that "double jeopardy does not apply to aggravating circumstances outside the death penalty context." *Guzman Nuñez*, 174 Wn.2d at 717; *see also State v. Kelley*, 168 Wn.2d 72, 80-82, 226 P.3d 773 (2010). However, because "the legal underpinnings of our precedent have changed" so significantly, we are compelled to revisit the issue in light of subsequent decisions of the United States Supreme Court. *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014).

The United States Supreme Court has clarified that for Sixth Amendment purposes, "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne v. United States*, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) (overruling *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002)). A plurality of the Court has further indicated that there is "no principled reason to distinguish, in this context, between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an 'offence' for purposes of the Fifth Amendment's Double Jeopardy Clause." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 111, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003).

In light of this guidance and as explained below, we find no logical or legal basis for holding that the elements of a crime for purposes of the Sixth Amendment's right to trial by jury are different from the elements of a crime for

purposes of the Fifth Amendment's double jeopardy clause. For both purposes, a fact other than proof of a prior conviction that increases the mandatory minimum sentence is an element of the offense. Accordingly, we hold that RCW 10.95.020 aggravating circumstances, which increase the mandatory minimum penalty for first degree murder, are elements of the offense of aggravated first degree murder for purposes of the double jeopardy clause. Therefore, Allen cannot be retried on the aggravating circumstances.

1. The original distinction between "sentencing factors" and "elements" for double jeopardy purposes paralleled the distinction between sentencing factors and elements for jury trial purposes

"A criminal 'offence' is composed of 'elements,' which are factual components that must be proved by the state beyond a reasonable doubt and submitted (if the defendant so desires) to a jury." *Monge v. California*, 524 U.S. 721, 737, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998) (Scalia, J., dissenting). Under traditional principles of Anglo-American criminal law, the elements of an offense were defined in the same way for all constitutional purposes, including both the Fifth Amendment's prohibition on double jeopardy and the Sixth Amendment's right to a jury trial. *Id.* at 737-38. However, the question of how to define the elements of an offense has generated a number of divided opinions from the United States Supreme Court over the last several decades. *Alleyne*, 570 U.S. at 105.

"The principal source of disagreement is the constitutional status of a special sort of fact known as a 'sentencing factor.'" *Id.*

The term "sentencing factor" was first used by the United States Supreme Court in *McMillan v. Pennsylvania*, 477 U.S. 79, 86, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986), "to refer to facts that are not found by a jury but that can still increase the defendant's punishment." *Alleyne*, 570 U.S. at 105. The Court held that state legislatures may define facts as sentencing factors, rather than elements, and further may provide that sentencing factors can be proved to a judge by a preponderance of the evidence, rather than being proved to a jury beyond a reasonable doubt. *McMillan*, 477 U.S. at 86, 91. In doing so, however, the Court did not "budge from the position that (1) constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense, and (2) that a state scheme that keeps from the jury facts that 'expos[e] [defendants] to greater or additional punishment,' may raise serious constitutional concern." *Apprendi v. New Jersey*, 530 U.S. 466, 486, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (alterations in original) (citations omitted) (quoting *McMillan*, 477 U.S. at 85-88).

The difference between "elements" and "sentencing factors" was first set forth in *McMillan*, a case concerning the right to a jury trial. Whether a particular fact is treated as an element or as a sentencing factor is also critical for double

10

jeopardy purposes because "[t]he Court generally has concluded . . . that the Double Jeopardy Clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside." *Bullington*, 451 U.S. at 438. Thus, unlike elements of an offense, sentencing factors (and sentences themselves) are generally not subject to the Fifth Amendment's double jeopardy clause.

In *Bullington*, the United States Supreme Court "established a 'narrow exception' to the general rule" for the sentencing phase of capital murder trials. *Monge*, 524 U.S. at 730. The Court reasoned that unlike a typical sentencing hearing, the sentencing phase of a capital murder trial had "the hallmarks of the trial on guilt or innocence." *Bullington*, 451 U.S. at 439. That is, rather than evidence being presented informally to a judge who had discretion to select a sentence from a wide range authorized by statute, there was an adversarial process that presented evidence to a jury, which was charged with making a binary choice based on proof beyond a reasonable doubt. *Id.* at 438.

Later, in *Monge*, the United States Supreme Court declined to apply *Bullington* to proof of a prior conviction in a noncapital case, even if similar sentencing procedures were used. 524 U.S. at 724-25. The Court determined that double jeopardy protections did not apply in that context because unlike in a capital case, the trial-like sentencing procedures used to prove prior convictions at

issue in *Monge* were a matter of "legislative grace, not constitutional command." *Id.* at 734. Thus, whether a fact could be treated as a sentencing factor for double jeopardy purposes was directly linked to the question of whether that fact was constitutionally required to be treated as an element for jury trial purposes.

It remains true that proof of a prior conviction does not require trial-like procedures or proof beyond a reasonable doubt. *Alleyne,* 570 U.S. at 111 n.1. However, that is not the case for aggravating circumstances like those at issue here. As discussed below, full jury trial procedures for RCW 10.95.020 aggravating circumstances are no longer a matter of legislative grace. They are now a constitutional command.

2.    Constitutional limits on "sentencing factors" for Sixth Amendment purposes have been refined over time

As noted above, state legislatures' authority to distinguish sentencing factors from elements for Sixth Amendment purposes is subject to constitutional limitations. *McMillan,* 477 U.S. at 86, 91. The United States Supreme Court first addressed what those limitations are in *Apprendi.* 530 U.S. 466. The Court has since clarified and refined its holdings, ultimately reaching the conclusion that a fact other than a prior conviction "that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne,* 570 U.S. at 103. Because an understanding of the way in which Sixth Amendment constitutional law has developed is necessary for our double

12

jeopardy analysis, we briefly discuss the line of cases leading up to the Supreme Court's decision in *Alleyne*.

The first such case, *Apprendi*, concerned New Jersey's hate crimes statute, which increased the maximum sentence for a crime if a judge found by a preponderance of the evidence that the crime was committed "'with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'" 530 U.S. at 469 (quoting former N.J. STAT. ANN. § 2C:44-3(e) (1995)). Analyzing the common law history of which facts must be proved to a jury, the United States Supreme Court determined that there was no "principled basis" for treating a fact that increased the maximum authorized term of imprisonment differently from the elements constituting the base offense. *Id.* at 476. In so ruling, the Court reasoned that "when the term 'sentence enhancement' is used to describe an increase beyond the *maximum* authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." *Id.* at 494 n.19 (emphasis added). Therefore, it must be submitted to a jury and proved beyond a reasonable doubt.

The line of cases that followed *Apprendi* applied its rule in a number of other contexts. *See Ring v. Arizona* 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) (capital punishment); *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct.

13

2531, 159 L. Ed. 2d 403 (2004) (state sentencing guidelines); *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) (federal sentencing guidelines); *S. Union Co. v. United States*, 567 U.S. 343, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012) (criminal fines). However, state legislatures retained the authority to classify facts as sentencing factors if they increased only the *minimum* penalty, rather than the *maximum* penalty. *Harris*, 536 U.S. at 550. Such sentencing factors could still be found by a judge by a preponderance of the evidence. *Id.*

This changed with the Supreme Court's holding in *Alleyne*, which overruled *Harris* and held that "there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum." 570 U.S. at 116. *Alleyne* also did away with *Apprendi*'s "functional equivalent" language. "The essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact *is an element* of a distinct and aggravated crime. It must, therefore, be submitted to the jury and found beyond a reasonable doubt." *Id.* at 115-16 (emphasis added).

Thus, a "sentencing factor" is defined as a fact that can increase the sentence for a crime but does not need to be proved to a jury beyond a reasonable doubt, such as proof of a prior conviction. Over time, the United States Supreme Court has substantially limited the types of facts that may be designated as sentencing

14

factors for purposes of the Sixth Amendment's jury-trial right. In accordance with *Alleyne*, the legislature's designation of a fact as a sentencing factor no longer controls. Now, a fact other than proof of a prior conviction that increases the minimum penalty authorized by law must be treated as an element, not a sentencing factor, for Sixth Amendment purposes. It is clear that the RCW 10.95.020 aggravating circumstances are elements for Sixth Amendment purposes because they are not limited to proof of a prior conviction and, by law, they increase the minimum penalty for first degree murder.

3.     A plurality of the United States Supreme Court has stated that elements are defined in the same way for purposes of the jury-trial right and the double jeopardy clause

As discussed above, the United States Supreme Court held in *Monge* that double jeopardy principles do not apply to sentencing factors, such as proof of prior convictions, outside the context of capital murder cases. 524 U.S. at 734. However, *Monge* was decided before *Apprendi* and subsequent cases in which the constitutional limits of which facts may be designated as sentencing factors for Sixth Amendment purposes were clearly set forth. The Court has not yet issued a definitive holding as to whether these constitutional limits also apply to the distinction between sentencing factors and elements for purposes of the Fifth Amendment's prohibition on double jeopardy, but a plurality of the Court has indicated that they do.

15

In *Sattazahn v. Pennsylvania*, the United States Supreme Court looked at the double jeopardy implications for sentencing factors after *Apprendi*, but it did not ultimately resolve the question. 537 U.S. 101. The defendant in *Sattazahn* was convicted of first degree murder, but the sentencing jury hung on the existence of an aggravating circumstance that would have authorized the death penalty. *Id.* at 103-05. The trial court therefore entered a life sentence in accordance with Pennsylvania law. *Id.* at 105. The conviction was overturned, and on remand, the Commonwealth again sought the death penalty on the basis of the same aggravator, as well as a second one introduced at the new trial. *Id.* The question before the Supreme Court was whether the Commonwealth was barred from retrying the aggravator or from seeking the death penalty on double jeopardy grounds. *Id.*

The majority held that a hung jury was not an acquittal on the aggravating circumstance, and therefore jeopardy had not terminated on the fact. *Id.* at 109. Consequently, it could be realleged at the second trial as a basis for imposing the death penalty. *Id.* at 116.

Three of the five justices in the majority opined that if the jury had acquitted Sattazahn of the aggravating circumstance, double jeopardy principles would have barred retrial of that fact.[5] *Id.* at 112 (plurality opinion). The plurality stated, "We

---

[5] The four dissenting justices would have held that jeopardy terminated when the trial court entered the life sentence and therefore did not discuss how aggravating circumstances

16

can think of no principled reason to distinguish, in this context, between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an 'offence' for purposes of the Fifth Amendment's Double Jeopardy Clause." *Id.* at 111. In light of the case history discussed above, we agree.

*Bullington* and *Monge* clearly indicate that whether a fact is an element for Fifth Amendment purposes depends on whether that fact is an element for Sixth Amendment purposes, that is, whether the constitution requires that the fact be proved to a jury beyond a reasonable doubt. Subsequent cases have clarified the test for determining what constitutes an element for Sixth Amendment purposes, but the United States Supreme Court has not indicated any intent to untether the definitions of an element for Fifth and Sixth Amendment purposes. The plurality in *Sattazahn* makes it clear that the Court is unlikely to do so, and we can find no case in our own jurisprudence that draws the distinction between elements for Fifth and Sixth Amendment purposes in a logically sound and intellectually honest way.

4.    Our case law after *Sattazahn* and *Alleyne* has not addressed the precise issue before us

Our case law has long viewed aggravating circumstances as sentencing factors not subject to double jeopardy, but "[w]e have yet to fully weave *Apprendi*

---

should be treated for double jeopardy purposes. *Sattazahn*, 537 U.S. at 118 (Ginsburg, J., dissenting).

into the fabric of our case law." *State v. McEnroe*, 181 Wn.2d 375, 389, 333 P.3d 402 (2014). This is equally true of *Alleyne*. In a handful of cases, we have opined that the *Apprendi* line of cases had no effect on how we view aggravating circumstances for double jeopardy purposes. However, in each case the facts were distinguishable or the double jeopardy discussion was not central to our holding, and none of these cases had the benefit of *Alleyne*.

For instance, in a case similar to *Sattazahn*, we held that a jury non-finding on an aggravating circumstance did not constitute an acquittal and, thus, that double jeopardy did not prevent retrial of the aggravating circumstance. *State v. Benn*, 161 Wn.2d 256, 264, 165 P.3d 1232 (2007). Because Allen was actually acquitted of the aggravating circumstances at his first trial, this case is clearly distinguishable.

In other opinions, we have indicated that the *Apprendi* line of cases does not affect the definition of an element for double jeopardy purposes, but doing so was not necessary to our decisions. For instance, in *State v. Eggleston*, the defendant was acquitted of first degree murder, but the jury returned a special verdict form on an aggravating circumstance relating to the first degree murder charge anyway. 164 Wn.2d 61, 66-67, 187 P.3d 233 (2008). We held that the special verdict form did not preclude consideration of the same aggravating circumstance at a later resentencing, on either double jeopardy or collateral estoppel grounds, because the

jury's answer to the special verdict was unnecessary, irrelevant, and in violation of the court's instructions, so we declined to consider it. *Id.* at 73. Thus, although we indicated that double jeopardy did not apply because the death penalty was not at issue, there was in fact no acquittal of the aggravating circumstance that would have implicated double jeopardy principles.

In *State v. Kelley*, we considered whether imposition of a firearm enhancement where use of a firearm was an element of the underlying offense violated the double jeopardy prohibition on multiple punishments for the same offense. 168 Wn.2d at 74. We summarily dismissed that argument, holding that "[i]f the legislature intends to impose multiple punishments, their imposition does not violate the double jeopardy clause." *Id.* at 77. We then discussed a "not entirely clear" argument by Kelley that "because sentencing factors are treated as 'elements[]' [of] the 'offense'" under the *Apprendi* line of cases, the firearm enhancement was "an 'element' of a greater offense and therefore creates unintended, redundant punishment." *Id.* at 80-81. We concluded that since "none of [the *Apprendi* cases] concern the double jeopardy clause," their holdings did not apply, and we assigned "no weight" to the plurality in *Sattazahn*. *Id.* at 82. However, this discussion was unnecessary to our holding, and *Kelley* did not concern the same legal question presented here. Kelley claims he was wrongfully subjected to multiple punishments, while Allen faces multiple prosecutions.

Finally, as noted above in the discussion of the special verdict forms used in Allen's trial, *State v. Guzman Nuñez* held that jury unanimity is required for acquittal of an aggravating circumstance. 174 Wn.2d at 719. We rejected our previous nonunanimity rule from *Goldberg* as incorrect because it was unsupported by authority and conflicted with our precedent. *Id.* at 713-14. We further held that the nonunanimity rule was harmful because it was potentially confusing and could allow juries to acquit on aggravating circumstances based on "an unwillingness to fully explore the reasons for any disagreement," rather than full and thorough deliberations. *Id.* at 718. Citing *Monge* and *Eggleston*, we also stated that the nonunanimity rule did not serve its purported purposes of judicial economy and finality because double jeopardy does not preclude retrial on aggravating circumstances outside the death penalty context. *Id.* at 717-18. However, as discussed above, *Eggleston* did not require us to reach that issue. *Guzman Nuñez* did not purport to reexamine the scope of *Monge*'s holding in light of the *Apprendi* line of cases, and further did not have the benefit of *Alleyne*, which was decided a year later.

In sum, although our cases have previously indicated that RCW 10.95.020 aggravating circumstances are not elements for purposes of the Fifth Amendment's double jeopardy clause, the legal underpinnings for those statements have changed

dramatically. We have not fully considered the impact of these changes until today.

> 5. The trial court properly dismissed the RCW 10.95.020 aggravating circumstances on double jeopardy grounds

Applying the principles from *Alleyne* to the facts before us, it is clear that the trial court properly dismissed the RCW 10.95.020 aggravating circumstances on double jeopardy grounds. Neither aggravating circumstance was limited to proof of a prior conviction, and either one would have increased the minimum sentence from a term of years to one of life imprisonment without the possibility of release or parole. As such, the constitution requires the aggravating circumstances to be proved to a jury beyond a reasonable doubt. The aggravating circumstances therefore no longer meet the definition of "sentencing factors" for Sixth Amendment purposes. They are elements.

Like the *Sattazahn* plurality, we can discern no principled basis for reaching a different conclusion in the double jeopardy context. We therefore hold that RCW 10.95.020 aggravating circumstances are elements of the offense of aggravated first degree murder for double jeopardy purposes. The jury acquitted Allen of both aggravating circumstances on all four counts in his first trial. Jeopardy therefore terminated on those circumstances, and the State is constitutionally barred from retrying them.

CONCLUSION

The special verdict forms combined with the polling of the jury show that the first jury unanimously acquitted Allen of the RCW 10.95.020 aggravating circumstances. The trial court properly dismissed these aggravating circumstances at the second trial on double jeopardy grounds, and we therefore affirm the Court of Appeals and remand for further proceedings consistent with this opinion.

_____

WE CONCUR:

_____

_____

_____

_____

_____

_____