OPINION
This appeal is taken from a final judgment of the Ashtabula County Court of Common Pleas. Appellant, Larry Hayes, appeals from multiple convictions for felonious assault with accompanying firearm specifications following a trial by jury.
Early in the evening of October 7, 1996, a group of young people gathered to converse in front of a residence in the village of Andover, Ohio. The group was comprised of Jamie Olsen ("Olsen"), John Wilson, Jr. ("Wilson"), Shawn Stevenson ("Stevenson"), and Kelly Creed ("Creed"). All were twenty-one years old, except for Creed who was eighteen years of age. The four individuals talked while standing in the driveway of the house where Olsen lived with his mother and sister.
Appellant lived with his family in a house that was located just down the street from Olsen's residence. Shortly after 9:00 p.m. on the night in question, appellant's teenage son, David Hayes, was working on an automobile in front of the Hayes residence. When David Hayes attempted to start the car, the engine sputtered and began to emit a heavy smoke.
The sight of the heavily smoking car apparently caused Olsen and his friends to laugh as they watched from down the street. David Hayes took offense based upon his perception that the assembled group was laughing at him. He responded by yelling a threat to kick a certain part of Olsen's anatomy. Olsen reciprocated with a demonstrative comment of his own. After several minutes of jawing back and forth, the argument ostensibly ended when David Hayes turned and walked into his house.
Moments later, however, appellant emerged from the house. He began walking toward Olsen's residence at a very brisk pace. When he was twenty to thirty feet away, appellant raised a pistol and began firing. Upon realizing that appellant was shooting, the members of the group scattered. Olsen and Stevenson ran into a wooded area behind Olsen's house. Wilson hid behind his automobile that was parked in the driveway of the residence. Creed, meanwhile, was trapped in her car where she had been seated when the shooting began.
After the initial discharge, appellant fired several more rounds toward the vehicles that were parked in the driveway. The bullets struck the cars driven by Creed and Wilson.
Several people in the neighborhood heard the commotion and called 911 to report that shots had been fired. By the time the police arrived, appellant had returned to his house. The police surrounded the house and made visual contact with appellant as he sat at the kitchen table drinking a beer. Several officers entered the doorway to the residence and placed appellant under arrest.
On February 4, 1997, the Ashtabula County Grand Jury indicted appellant on five counts of attempted murder in violation of R.C.2903.02 and 2923.02 and five counts of felonious assault as proscribed by R.C. 2903.11(A)(2). The five counts corresponded to five alleged victims, to wit: Olsen, Wilson, Stevenson, Creed, and a fifth person who had been nearby at the time appellant discharged the weapon. Each of the ten counts contained a corresponding firearm specification as provided for by R.C.2941.145.
The initial arraignment on the charges was delayed so that appellant could obtain private counsel. Appellant, however, failed to retain counsel by the time of the rescheduled date of February 13, 1997. Consequently, the trial court proceeded with the arraignment and entered a plea of not guilty on behalf of appellant. On March 4, 1997, the trial court appointed counsel from the Ohio Public Defender's Office to represent appellant.
Prior to trial, the state moved to dismiss one count of attempted murder and one count of felonious assault relating to the purported fifth victim. The trial court granted the motion.
The matter came on for trial on June 24, 1997. Appellant was represented by two public defenders. A jury was empanelled and its members were transported to the scene of the alleged crime for a jury view. Following this, the trial court dismissed the jury for the day.
The trial court then conducted a hearing on an oral motion to suppress made by defense counsel. The motion requested that the trial court suppress certain statements that appellant had made to the police in the immediate aftermath of his arrest. Two police officers testified during the suppression hearing, but appellant did not take the witness stand. Upon considering the police officers' testimony, the trial court orally overruled the motion to suppress.
As the trial continued, the state called numerous witnesses in order to present its case, including Olsen, Wilson, Stevenson, Creed, three police officers, and a criminalist from the Lake County Regional Forensic Laboratory. The defense called five witnesses, including David Hayes and appellant.
On June 27, 1997, the jury returned its verdicts. It acquitted appellant of the attempted murder charges, but convicted him of all four counts of felonious assault with accompanying firearm specifications. The matter came on for sentencing on September 17, 1997. The trial court ordered appellant to serve five years in prison for each felonious assault conviction, with the sentences to run concurrently. The four firearm specifications were merged for purposes of sentencing. The trial court then imposed an additional prison term of three years for the firearm specification as mandated by R.C. 2929.14(D)(1)(a)(i), to be served consecutively to the five year sentence handed down for the felonious assault convictions.
From this judgment, appellant filed a timely appeal with this court through new appellate counsel. He now asserts the following assignments of error:
 "[1.] The trial court erred to the prejudice of appellant when it instructed the jury that defendant bears the burden of persuading the fact finder, by a preponderance of the evidence, that he acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the person into using deadly force in order for the defendant to be convicted of aggravated assault rather than felonious assault.
 "[2.] The appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 "[3.] The trial court erred to the prejudice of appellant when it failed to grant defendant's motion to dismiss on grounds of double jeopardy.
 "[4.] The trial court erred in denying appellant's request to discharge his attorneys from representing him during the sentencing hearing.
 "[5.] The trial court erred, to the prejudice of the appellant by denying the appellant's motion to suppress statements purportedly made by the appellant.
 "[6.] The appellant's convictions for four counts of felonious assault with a firearms specification were against the manifest weight of the evidence."
 I.
In his first assignment of error, appellant posits that the trial court erred in instructing the jury. Specifically, appellant takes issues with the following passage from the trial court's charge to the jury:
 "The offense of Aggravated Assault is distinguished from Felonious Assault in that Aggravated Assault involves knowingly attempting to cause physical harm to another by means of a deadly weapon while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim * * *.
 "Now, the defendant, Larry Hayes, has the burden of proving by a preponderance of the evidence that he acted while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant, Larry Hayes, into using deadly force."
Appellant suggests that it was error for the trial court to require him to prove that he acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victims. In essence, appellant contends that the trial court's instructions to the jury violated his right to due process of law because they improperly allocated the burden of proof with respect to this aspect of the offense.
We disagree. Notwithstanding appellant's assertion to the contrary, the jury instruction complained of was correct as a matter of law.
In order to explain why the instruction was correct, we begin with the criminal statutes at issue. Appellant was charged and ultimately convicted of felonious assault in violation of R.C.2903.11(A)(2), a felony of the second degree. This statute provides:
"(A) No person shall knowingly:
"(1) * * *
 "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
In a similar vein, R.C. 2903.12 proscribes aggravated assault, a felony of the fourth degree. It reads in part:
 "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 "(1)Cause serious physical harm to another or to another's unborn;
 "(2)Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
As can be seen from the two statutes, the elements of felonious assault and aggravated assault are very similar. The only notable difference is the fact that the offense is mitigated down from felonious assault to aggravated assault when the offender acts while under the influence of sudden passion or rage brought on by serious provocation occasioned by the victim.
It should be noted, however, that aggravated assault is not a lesser included offense of felonious assault. State v. Deem
(1988), 40 Ohio St.3d 205, 210. Instead, the former is an inferior degree of the latter. Id. at 210-211. The Supreme Court of Ohio has explained that "an offense is an `inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements which will generally be presented in the defendant's case." (Emphasis sic.) Id. at 209. In this case, the elements of aggravated assault are identical to those of the indicted offense of felonious assault except for the additional presence of one or both mitigating circumstances, to wit: sudden passion or a sudden fit of rage brought on by serious provocation occasioned by the victim.
The crux of appellant's first assignment is that the trial court erred when instructing the jury by improperly shifting the burden of proof with respect to the mitigating circumstances. According to appellant, the trial court should have instructed the jury that the state had the burden of proving either sudden passion or a sudden fit of rage.
R.C. 2901.05(A) addresses the burden of proof in criminal proceedings:
 "(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused."
Appellant goes to great lengths to emphasize that the mitigating circumstances contained in R.C. 2903.12 are not an "affirmative defense" as that term is defined in R.C. 2901.05(C). On this point, we agree with appellant. The mitigating circumstances are not an affirmative defense because, if one or both are proven, they do not shield the defendant from all criminal liability. Rather, they mitigate, or lessen, the culpability of the offender by reducing the seriousness of the offense for which the offender may be held criminally liable.
Appellant, however, goes on to argue that since the mitigating language in R.C. 2903.12 is not an affirmative defense, then it must be an actual element of the offense which the state has the burden of proving beyond a reasonable doubt. Appellant is simply incorrect.
The Supreme Court of Ohio has expressly held that the R.C.2901.05(A) mandate regarding affirmative defenses is applicable to mitigating circumstances. See State v. Rhodes (1992), 63 Ohio St.3d 613;State v. Muscatello (1978), 55 Ohio St.2d 201. In doing so, the Supreme Court has essentially determined that a mitigating circumstance is not an element of the offense, but rather is akin to an affirmative defense. Thus, the mitigating language contained in the aggravated assault statute does not constitute an element of the crime for which the burden of proof is ever placed upon the prosecution under R.C. 2901.05(A).[1]
In Rhodes, the Supreme Court considered whether a defendant on trial for aggravated murder or murder should bear the burden of proving one or both of the mitigating circumstances contained in the inferior degree offense of voluntary manslaughter.[2] The court held that the defendant should bear the burden of proving that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which was occasioned by the victim, in order to be convicted of voluntary manslaughter, rather than aggravated murder or murder. Rhodes, 63 Ohio St.3d at syllabus.
In light of Rhodes, there can be no doubt that R.C. 2901.05(A) places both the burden of production and the burden of persuasion upon a defendant who wishes to prove the existence of a mitigating circumstance such that the defendant will only be convicted of an inferior degree of the charged offense. Thus, if a defendant on trial for felonious assault produces evidence of one or both of the mitigating circumstances set forth in R.C. 2903.12, the defendant is entitled to an instruction on aggravated assault as an inferior degree of felonious assault if the trial court determines as a matter of law that a reasonable jury could find by a preponderance of the evidence that the defendant had established the existence of sudden passion or a sudden fit of rage brought on by serious provocation occasioned by the victim.
In the instant matter, the jury instruction given by the trial court was a correct statement of the law as it exists in Ohio. See, generally, 4 Ohio Jury Instructions (1997), Section 503.11, at 132-135 (providing model Ohio jury instruction for felonious assault). Where a defendant is charged with felonious assault, but the defendant presents sufficient evidence that he or she may have acted while under the influence of sudden passion or in a sudden fit of rage brought on by serious provocation occasioned by the victim, the trial court must instruct the jury that the defendant bears the burden of proving one or both of the mitigating circumstances by a preponderance of the evidence in order to be convicted of aggravated assault. State v. Roberts
(1996), 109 Ohio App.3d 634, 638, citing State v. Schofield (Feb. 4, 1994), Lucas App. No. L-93-008, unreported, 1994 WL 30506. See, also, Deem, 40 Ohio St.3d at paragraph four of the syllabus (holding that where a defendant on trial for felonious assault presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury).
Indeed, this court has previously held that a defendant charged with felonious assault under R.C. 2903.11 appropriately bears the burden of proving one or both of the mitigating circumstances in R.C. 2903.12 by a preponderance of the evidence in order to be convicted of the inferior degree offense of aggravated assault. See State v. Owens (June 28, 1996), Lake App. No. 95-L-078, unreported, at 6-8, 1996 WL 648760. Given this, it is obvious that the first assignment is without merit.
 II.
Appellant's second assignment of error is predicated on his belief that he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section10, Article I of the Ohio Constitution. In order to demonstrate ineffective assistance of trial counsel, a criminal defendant must satisfy a two-part test as formulated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was deficient in that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-688. Second, it must be shown that counsel's deficient performance prejudiced the defendant. Id. at 687. In this context, prejudice means that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694.
The Supreme Court of Ohio has endorsed the Strickland test for determining the issue of ineffective assistance of counsel. See,e.g., State v. Bradley (1989), 42 Ohio St.3d 136, 141-142. This court has likewise embraced the Strickland standard. See, e.g.,State v. Patterson (May 22, 1998), Trumbull App. No. 96-T-5439, unreported, at 7, 1998 WL 310737; Mentor v. Richardson (Dec. 26, 1997), Lake App. No. 96-L-155, unreported, at 3-4, 1997 WL 799567.
Appellant contends that his counsel was ineffective for failing to object to the aforementioned jury instruction in which the trial court stated that appellant had the burden of proving that he acted while under the influence of sudden passion or in a sudden fit of rage. According to appellant, counsel's failure to object to the instruction as given constituted ineffective representation that fell below an objective standard of reasonableness.
It is true that appellant's counsel did not object to this aspect of the jury charge. However, as explained in our discussion of the previous assignment, the trial court's instruction to the jury regarding the burden of proof on the mitigating circumstance was absolutely correct.
The failure to object to a legally accurate jury instruction can not possibly amount to ineffective assistance of counsel. Indeed, we would be more inclined to view counsel's performance as falling below an objective standard of reasonableness had counsel actually objected to the perfectly valid jury charge. The second assignment is not well-taken.
 III.
In his third assignment of error, appellant maintains that the trial court erred by denying his motion to dismiss the charges pending against him based on double jeopardy grounds. From appellant's perspective, the refusal of the trial court to dismiss the charges opened the door for the state to place him in jeopardy a second time for the same offense.
The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" The Fifth Amendment protection against double jeopardy has been applied to the states through the operation of the Fourteenth Amendment. State v.Lovejoy (1997), 79 Ohio St.3d 440, 443. Beyond this, the Ohio Constitution contains analogous language. Section 10, Article I of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense."
It is well established that the Double Jeopardy Clause of theFifth Amendment prohibits successive prosecutions for the same offense. Monge v. California (1998), 524 U.S. 721, citing North Carolina v. Pearce, 395 U.S. 711, 717;Lovejoy, 79 Ohio St.3d at 443. This mantra holds true regardless of whether the initial prosecution results in a conviction or an acquittal of the accused. In the casesub judice, appellant claims that he was subjected to multiple prosecutions for the same offense.
Appellant initially stood trial in the Eastern Division of the Ashtabula County Court for conduct arising from the same shooting incident. In this proceeding, appellant was convicted of one count of using a weapon while intoxicated in violation of R.C. 2923.15
and two counts of criminal damaging in violation of R.C. 2909.06. Appellant received jail sentences ranging from ninety to one hundred eighty days for each of these three convictions.
Upon being subsequently prosecuted in the Ashtabula County Court of Common Pleas for attempted murder and felonious assault, appellant filed the aforementioned motion to dismiss. The motion was predicated on appellant's belief that the constitutional guaranty against double jeopardy prohibited a second prosecution for conduct arising out of the same set of facts. The trial court overruled the motion.
The question presented is whether the state could prosecute appellant for attempted murder and felonious assault after having tried and convicted him on charges of using a weapon while intoxicated and criminal damaging. In order to answer this query, we must apply the analysis first set forth by the United States Supreme Court in Blockburger v. United States (1932),284 U.S. 299, 304:
 "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."
This analysis has come to be known as the Blockburger, or "same elements," test. Pursuant to this test, a court must compare the statutory elements of the offenses charged to determine whether there has been a double jeopardy violation. If each offense contains an element which the other does not, then the accused is not being prosecuted twice for the same offense. The Blockburger test focuses on the elements of the relevant statutes, not on the conduct of the defendant.State v. Moore (1996), 110 Ohio App.3d 649, 652.
For a brief period of time, the Court employed a second test when a defendant claimed that he or she was subjected to successive prosecutions for the same criminal act in violation of the Double Jeopardy Clause. In Grady v. Corbin (1990),495 U.S. 508, the Court recognized the continuing validity of theBlockburger test. Upon doing so, however, the Court observed that even if multiple prosecutions were not barred by Blockburger, the second prosecution could be prohibited if the charging authority sought to establish a necessary element of that crime by proving conduct for which the defendant had previously been convicted in the first prosecution. The Court held "that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted."Grady, 495 U.S. at 510. In other words, Grady established a "same conduct" test.
Only three years later, though, the Court expressly overruledGrady in United States v. Dixon (1993), 509 U.S. 688. Justice Scalia, writing for the majority, repudiated the "same conduct" rule announced in Grady as being "wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." Dixon, 509 U.S. at 704. In the wake of Dixon, the Blockburger "same elements" test is the exclusive means for determining whether two crimes constitute the same offense in the context of successive prosecutions.
In the case at bar, appellant acknowledges that the United States Supreme Court has overruled Grady, thereby reaffirming theBlockburger test as the only applicable federal constitutional analysis. Appellant, however, suggests that Ohio courts are still free to apply the Grady analysis pursuant to Section 10, Article I
of the Ohio Constitution. Upon applying Grady to the facts herein, appellant maintains that the second prosecution for attempted murder and felonious assault violated the protection against double jeopardy because the state necessarily had to prove conduct constituting an offense for which he had already been tried and convicted in the first prosecution.
We decline to accept appellant's invitation to apply Grady. The "same conduct" analysis has been exposed as lacking any historical basis in double jeopardy jurisprudence. Moreover, appellant has not cited any authority whatsoever to suggest that the Supreme Court of Ohio has ever interpreted Section 10, Article I
of the Ohio Constitution any differently from the federal protection embodied by the Fifth Amendment. See State v. Gartrell (1995),103 Ohio App.3d 588, 589, fn. 1 ("Nothing in the text or in the Ohio Supreme Court's interpretation of Section 10, Article I of the Ohio Constitution suggests that the protections against multiple prosecutions provided under Section 10, Article I are any greater than the protections afforded by the Double Jeopardy Clause of the United States Constitution."). See, also, State v. Tanner (1993),90 Ohio App.3d 761, 766.
Thus, the Blockburger test is the applicable standard. Even appellant does not argue that he was prosecuted twice for the same offense if the Blockburger analysis is applied to the case at hand.
Each offense for which appellant was convicted is comprised of at least one element that is not contained within the statutes proscribing the other crimes. R.C. 2923.15 requires that the defendant be under the influence of alcohol or a drug of abuse. A crucial element of R.C. 2909.06(A)(1) is that the defendant cause or create a substantial risk of physical harm to property of another. R.C. 2903.02, in conjunction with R.C. 2923.02, requires that the defendant purposely attempt to cause the death of another person. Finally, an essential element of R.C. 2903.11(A)(2) is that the defendant must have employed a deadly weapon or dangerous ordnance.
Therefore, since each offense required proof of an element that the others did not, it can not be said that appellant was tried twice for the same offense. The prosecution of appellant on charges of attempted murder and felonious assault was not barred due to his prior trial and convictions for using a weapon while intoxicated and criminal damaging. There was no violation of the guaranty against double jeopardy. The third assignment is meritless.
 IV.
The fourth assignment of error challenges the trial court's decision not to allow defense counsel to withdraw from representation at the sentencing hearing. As mentioned previously, appellant was represented by two public defenders at trial. He was convicted of the felonious assault charges with accompanying firearm specifications on June 27, 1997.
Following the convictions, the matter did not come on for sentencing until September 17, 1997. The same two public defenders were still representing appellant at that time. Appellant had not taken any steps to request the appointment of different counsel during the interval between the trial and the sentencing hearing.
At sentencing, however, the public defenders made a motion to withdraw from representation. The sole basis for the motion was that appellant had just informed the public defenders on the morning of the sentencing hearing that he no longer wanted them to represent him. The trial court then engaged in the following exchange with appellant:
 "THE COURT: Mr. Hayes, your counsel has made a motion at your request that they be allowed to withdraw from further representation of you in this matter; is that correct?
"MR. HAYES: That is true.
 "THE COURT: Can you briefly tell me why you wish to discharge your attorneys?
"MR. HAYES: I was dissatisfied.
"THE COURT: Can you be more specific?
"MR. HAYES: I was dissatisfied with the defense."
Thereupon, the trial court denied the oral motion of the public defenders to withdraw from representation. The matter proceeded, and the trial court imposed sentence on appellant.
It is axiomatic that a criminal defendant has the right to counsel under the Sixth Amendment of the United States Constitution and Section10, Article I of the Ohio Constitution. State v. Milligan (1988),40 Ohio St.3d 341, paragraph one of the syllabus. This does not mean, however, that the defendant is automatically entitled to counsel of his own choosing. Moreover, the defendant has no right to counsel with whom he has a rapport or with whom he can develop a meaningful lawyer-client relationship. State v. Henness (1997),79 Ohio St.3d 53, 65. Under the federal and state constitutional guaranties, the defendant is simply entitled to the effective assistance of legal counsel.
It is well-settled that a motion to withdraw as counsel is committed to the sound discretion of the trial court. State v.Edgell (1972), 30 Ohio St.2d 103, 111; State v Jones (Apr. 30, 1999), Clark App. No. 98-CA-42, unreported, at 5, 1999 Ohio App. LEXIS 1901. An appellate court will not reverse the decision of the trial court in the absence of an abuse of discretion. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. State v. Montgomery
(1991), 61 Ohio St.3d 410, 413; State v. Adams (1980), 62 Ohio St.2d 151,157.
Upon review, it is obvious that the trial court did not abuse its discretion by denying the motion to withdraw. Appellant had more than ample time between the trial and the sentencing hearing in which he could have notified the public defenders of his desire that they withdraw from representation. By waiting until the morning of the sentencing hearing, appellant placed the trial court in the position of having to continue the proceeding if it granted the motion to withdraw. Quite understandably, courts have a tendency to disapprove of such late requests to change counsel.
Moreover, when the trial court inquired as to why appellant wished his attorneys to withdraw from representation, the only explanation offered by appellant was that he was "dissatisfied with the defense." This hardly constituted a valid reason for the trial court to allow the public defenders to withdraw at sentencing, thereby necessitating a continuance of the proceedings.
Finally, there is nothing in the record to suggest that appellant was prejudiced in any way by the denial of the motion to withdraw. Appellant had already been convicted of the crimes charged by the time he requested his counsel to withdraw at the commencement of the sentencing hearing. The only thing that remained was for the trial court to sentence appellant based on the convictions. It should be noted that the trial court allowed appellant to make an extremely lengthy statement prior to being sentenced, and one of the public defenders even made a plea for leniency on appellant's behalf before the sentence was handed down.
For all of the foregoing reasons, the trial court did not abuse its discretion by denying the motion to withdraw. The fourth assignment is not well-founded.
 V.
In the fifth assignment of error, appellant contends that the trial court erred by denying his motion to suppress certain oral statements he made to an arresting police officer. Appellant asserts that the statements were made in derogation of his Fifth Amendments rights as protected by Miranda v. Arizona (1966), 384 U.S. 436, and its progeny.
Following the empanelling of the jury, but prior to the commencement of the trial, the defense made an oral motion to suppress certain statements made by appellant to Sergeant Christopher James Baker ("Sergeant Baker") of the Andover Police Department. The trial court dismissed the jury for the day and then conducted a suppression hearing.
Sergeant Baker testified that he was one of several police officers who arrived at the scene in response to the report that shots had been fired. Upon entering appellant's residence, the police ordered him to the ground. Appellant complied, and Sergeant Baker effectuated the arrest by handcuffing him. After securing appellant, the officer escorted him out of the house. As Sergeant Baker steered him toward a police cruiser, appellant began to talk voluntarily. During the suppression hearing, Sergeant Baker testified as follows regarding the substance of the statements made by appellant:
 "He asked if anyone got shot. He stated to me, `I knew this was going to happen.' He mentioned that he just snapped. He mentioned about a hunting license, and he wanted to know if he could get, be able to hunt with a felony conviction. Then he looked at me and asked me if this was a felony as we walked out onto the front lawn."
Sergeant Baker interrupted appellant as they walked across the yard toward the police car and directed him not to say anything else. After appellant was placed in the back of the cruiser, Sergeant Baker and a deputy from the Ashtabula County Sheriff's Department both read the Miranda warnings to him.
Sergeant Baker expressly testified that he did not ask any questions whatsoever while escorting appellant from the house to the police car. According to the officer, appellant simply began to talk of his own volition. Sergeant Baker's account was uncontroverted because appellant elected not to testify at the proceeding.
The trial court orally denied the motion to suppress following the direct and cross-examination of Sergeant Baker. As a result, during the course of his trial testimony before the jury, Sergeant Baker was permitted to testify regarding the substance of appellant's statements.
At a hearing on a motion to suppress, the trial court functions as the trier of fact. As such, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284,288; State v. DePew (1988), 38 Ohio St.3d 275,277; State v. Fanning (1982), 1 Ohio St.3d 19, 20.
On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592;State v. Guysinger (1993), 86 Ohio App.3d 592, 594; State v.Klein (1991), 73 Ohio App.3d 486, 488; Willowick v. Sable (Dec. 12, 1997), Lake App. No. 96-L-189, unreported, at 16, 1997 Ohio App. LEXIS 5562. After accepting such factual findings as accurate, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied. Retherford, 93 Ohio App.3d at 592; Klein,73 Ohio App. 3d at 488; State v. Green (Feb. 6, 1998), Lake App. No. 97-L-085, unreported, at 11, 1998 Ohio App. LEXIS 425.
On appeal, appellant now claims that his Fifth Amendment privilege against self-incrimination was infringed upon because Sergeant Baker obtained the aforementioned statements prior to reading the Miranda warnings. Compliance with the strictures ofMiranda is measured by the totality of the circumstances. Statev. Eley (1996), 77 Ohio St.3d 174, 178; State v. Jett (Mar. 31, 1998), Portage App. No. 97-P-0023, unreported, at 5, 1998 WL 258166.
Under Miranda, any inculpatory or exculpatory statement made by a suspect as a result of custodial interrogation may not be introduced against the suspect in a criminal trial unless the prosecution can prove that the suspect was cognizant of certain procedural safeguards meant to protect his or her Fifth Amendment privilege against self-incrimination. These procedural safeguards are by now very familiar:
 "He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. * * * After such warnings have been given * * * the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement."
Miranda, 384 U.S. at 479.
The mechanism by which Miranda is triggered is "custodial interrogation." Thus, there are two factors that must be present before the police must give Miranda warnings to a suspect in a criminal case: (1) custody; and (2) interrogation. Jett, 1998 WL 258166, at 6.
In Miranda, the United States Supreme Court described custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Footnote omitted.) Miranda, 384 U.S. at 444. Since then, the Court has refined its definitions of both terms.
Custody encompasses a formal arrest or restraint of movement of the degree associated with a formal arrest. California v. Beheler
(1983), 463 U.S. 1121, 1125; Oregon v. Mathiason (1977),429 U.S. 492, 495. Under this standard, a suspect is obviously in custody if he or she is formally placed under arrest prior to the interrogation. In non-arrest circumstances, the restraint on the suspect's freedom of movement must be significant (i.e., the equivalent of a formal arrest) in order to constitute custody for purposes of Miranda. Jett, 1998 WL 258166, at 6.
The Court has defined "interrogation" to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Footnotes omitted.) Rhode Island v. Innis (1980),446 U.S. 291, 301. Thus, Miranda warnings are required when a suspect in custody is subjected to express questioning or its functional equivalent. Id. at 300-301; Jett, 1998 WL 258166, at 6.
In the present case, there is no doubt that the custody element of Miranda was satisfied. Sergeant Baker testified at the suppression hearing that appellant was placed under arrest upon being handcuffed inside the residence. The question that remains is whether appellant was subjected to interrogation when he made the statements which were the focus of the motion to suppress.
Upon reviewing the totality of the circumstances, it is obvious that these statements were not the result of any interrogation or questioning by Sergeant Baker or any other police officer on the scene. Rather, appellant made these statements of his own volition as he was being led from the house to the police cruiser. There was absolutely no evidence to the contrary introduced at the suppression hearing. Appellant spoke voluntarily and without any prompting by the police. Indeed, Sergeant Baker actually interrupted appellant and instructed him not to say anything else until the police could secure him in the squad car.
Since the statements complained of were not the result of express questioning or its functional equivalent, there was noMiranda violation. The trial court properly overruled the motion to suppress. The fifth assignment is meritless.
 VI.
The sixth and final assignment proposes that the jury's guilty verdicts on the four counts of felonious assault were against the manifest weight of the evidence. The test for whether a criminal conviction runs counter to the weight of the evidence is as follows:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v. Thompkins
(1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring).
As a general matter, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact to decide. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When reviewing questions of weight, the role of an appellate court is to engage in a limited weighing of the evidence adduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Patterson, 1998 WL 310737, at 14.
In the present case, appellant challenges his four felonious assault convictions as being against the manifest weight of the evidence. In order to convict appellant of these counts, the jury had to conclude that he knowingly caused or attempted to cause physical harm to the victims by means of a deadly weapon. See R.C. 2903.11(A)(2).
The crux of appellant's defense was that he did not actually fire at the four individuals, thereby negating any inference that he attempted to cause physical harm to them. In order to present this argument to the jury, appellant testified on his own behalf at trial.
Appellant indicated during the course of his testimony that he only wanted to stop the escalating tension between his son and Olsen. To accomplish this, appellant purportedly fired two shots at an upward angle into the air so that the assembled group would be forced to scatter. Appellant specifically testified as follows: "I shot the gun in the air. I scared the hell out of them. I wanted to stop everything." After firing these initial shots, appellant testified that he fired three additional bullets into a parked vehicle which he believed belonged to Olsen. As it turned out, the car belonged to Creed. Appellant, however, expressly denied knowing that Creed was inside the automobile when he fired the shots.
The four victims testified during the prosecution's case-in-chief. They indicated that appellant fired at least three shots as he initially approached the group. Moreover, Olsen, Wilson, Stevenson, and Creed all stated that appellant fired the initial burst of shots at the assembled group by extending his right arm straight out from his body. In this respect, the four victims were consistent in their testimony that appellant initially fired in their direction, rather than up in the air as appellant claimed.
On appeal, appellant essentially asks this court to reverse his convictions for felonious assault on the basis of the conflict in testimony between himself and the victims as to whether he fired the initial rounds into the air or at the assembled group. This was purely a question of fact that fell within the province of the jury. Each juror had the responsibility to assess the credibility of the various witnesses and the weight to be given their respective testimony.
Given the testimony and exhibits adduced at trial, this court concludes that there was ample evidence upon which the jury could have reasonably relied to find that appellant attempted to cause physical harm to the victims by means of a deadly weapon. All four of the victims testified that appellant fired approximately three shots at the members of the group as they stood in Olsen's driveway. Upon realizing that appellant was shooting at them, Olsen and Stevenson ran into a wooded area out of fear for their lives, Wilson dove behind an automobile for cover, and Creed huddled for safety in her car. Despite appellant's assertion to the contrary, there was much evidence to suggest that he fired several rounds toward the four victims as he initially approached the group.
After reviewing the record, we do not believe that the jury lost its way or created a manifest miscarriage of justice when resolving the testimonial conflict between appellant and the four victims. The felonious assault convictions were not against the weight of the evidence. The sixth assignment is not well-taken.
 VII.
Based on the foregoing analysis, appellant's assignments of error are without merit. Accordingly, the judgment of the trial court is affirmed.
 __________________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., O'NEILL, J., concur.
[1] It should be noted that if a defendant is charged at the outset with aggravated assault, then neither the defendant nor the state is required to establish either of the mitigating circumstances in R.C. 2903.12. Instead, the trial court presumes (to the benefit of the defendant) the existence of one or both of the mitigating circumstances as a result of the state's decision to try the defendant for aggravated assault, rather than felonious assault. See Rhodes, 63 Ohio St.3d at 618 (stating this holding in the context of voluntary manslaughter as an inferior degree of aggravated murder and murder). In this scenario, acting under the influence of "sudden passion or in a sudden fit of rage" is still not an element of the offense which the state must prove beyond a reasonable doubt. See id. at 629, fn. 9; Muscatello, 55 Ohio St. 2d at paragraph one of the syllabus.
[2] The mitigating circumstances in the voluntary manslaughter statute, R.C. 2903.03(A), are identical to the mitigating language contained in the aggravated assault statute.