**Valentin JARAMILLO, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 76A03–0306–CR–209.**

Court of Appeals of Indiana.

Feb. 11, 2004.

John Pinnow, Special Assistant to the State Public Defender, Greenwood, for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

FRIEDLANDER, J.

Valentin Jaramillo appeals his conviction of Operating While Intoxicated Causing Death,[1] a class B felony, and the determination that he is a Habitual Substance Offender.[2] Jaramillo presents the following restated issues for review:

1. Was the evidence sufficient to support the enhancement of Jaramillo's conviction for driving while intoxicated from a class C felony to a class B felony?

2. Was the evidence sufficient to support the determination that Jaramillo is a habitual substance offender?

3. In the event that Jaramillo prevails on Issues 1 and 2, may he be retried with respect to the enhancement of his conviction and the determination that he is a habitual substance offender?

4. Did the trial court err in its order of restitution?

We affirm in part, reverse in part, and remand.

The facts favorable to the conviction are that at approximately 2:30 a.m. on August 29, 2002, Jaramillo was driving eastbound on U.S. Highway 20 in Steuben County, Indiana. He crossed the centerline and drove into the westbound lane. At that time, Margaret Pocock was driving a pickup truck westbound on U.S. 20. She saw Jaramillo cross into her lane and she swerved to her left in an unsuccessful attempt to avoid him. Jaramillo's vehicle struck the passenger side of Pocock's truck. Pocock's husband, Brian, was sitting in the passenger seat of the truck and was killed. When police officers arrived on the scene a short time later, they noticed that Jaramillo smelled of alcohol. A blood-alcohol test was performed on Jaramillo and revealed that he had a blood-alcohol content of .137%.

Jaramillo was charged with operating while intoxicated (OWI) causing death. That charge was elevated from a class C to a class B felony because the State alleged that, within the five years preceding the commission of the offense, Jaramillo had a prior unrelated OWI conviction. I.C. § 9–30–5–5(a). The State also alleged that Jaramillo was a habitual substance offender, based upon two previous OWI convictions. Jaramillo was convicted as set out above and now appeals.

1.

Jaramillo contends that the evidence was insufficient to support the enhancement of his conviction for driving while intoxicated from a class C felony to a class B felony. This argument is based upon the assertion that the State failed to

1. Ind.Code Ann. § 9–30–5–5 (West, PREMISE through 2003 1st Regular Sess.).

2. Ind.Code Ann. § 35–50–2–10 (West, PREMISE through 2003 1st Regular Sess.).

present sufficient evidence to prove the existence of the alleged prior OWI conviction.

■■■ We review challenges to the sufficiency of the evidence supporting a habitual offender determination the same as any other sufficiency challenge. We do not reweigh the evidence or assess witness credibility. *Lewis v. State*, 769 N.E.2d 243 (Ind.Ct.App.2002), *trans. denied.* Instead, we examine the evidence and reasonable inferences supporting the verdict and will affirm if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

We note first that I.C. § 9–30–5–5(a) provides that operating while intoxicated causing death is elevated to a class B felony "if, within the five (5) years preceding the commission of the offense, the person had a prior unrelated conviction under this chapter." The plain meaning of this language is that in order to be subject to an enhancement under I.C. § 9–30–5–5, the defendant's previous conviction must have been entered less than five years before the instant offense was committed. In support of the enhancement, the State alleged that Jaramillo was convicted of an OWI offense on March 30, 1998 (the 1998 conviction). Jaramillo contends that the State failed to prove that predicate offense.

After the jury returned verdicts finding Jaramillo guilty of operating while intoxicated as a class A misdemeanor and operating a vehicle while intoxicated causing death as a class C felony, the court proceeded to the second phase of the bifurcated trial. In the second phase, the jury was asked to determine whether Jaramillo was guilty of certain previous offenses, including the 1998 conviction. If proven, the 1998 conviction would serve to enhance the instant OWI offense, and, combined with another previous offense, would serve as the basis for a habitual substance offender finding. We note that in the charging information relative to the OWI enhancement, the 1998 conviction was the only predicate offense alleged. The charging information pertaining to the habitual substance offender charge alleged the minimum two predicate offenses, one of which was the 1998 conviction.

In seeking to prove the 1998 conviction during the second part of the bifurcated proceeding, the State called as a witness Trooper Roland Purdy of the Indiana State Police. Trooper Purdy testified that on September 6, 1997, he arrested and ticketed Jaramillo in LaGrange County, Indiana for operating a vehicle while intoxicated. During Trooper Purdy's testimony, the State introduced into evidence a copy of the criminal information filed against Jaramillo relating to the 1998 conviction. The State also introduced the probable cause affidavit completed by Trooper Purdy in conjunction with the incident. Finally, the State introduced a copy of an order issued by the LaGrange Superior Court pertaining to a guilty plea entered by Jaramillo in that proceeding. The order stated, in pertinent part, as follows:

> Defendant enters a plea of Guilty to the offense of *Operating a Vehicle While Intoxicated, a Class D Felony, as charged in Count I.* Sworn evidence heard. This Court finds that the Defendant freely and voluntarily waivers [sic] his/her Rights, that he/she voluntarily pleads guilty, and that there is a factual basis for defendant's plea.

> The Court takes Defendant's plea under advisement and Orders the Probation Office to prepare a Pre–Sentence Investigation Report. Cause continued for further proceedings/sentencing to

*March 9, 1998* at 8:30 o'clock *a.M.* [sic][.]

*The Exhibits* at 15. All of the aforementioned documents bore the same cause number, i.e., 44D01–9709DF96. The controversy here centers not upon those documents or Trooper Purdy's testimony, but upon the *lack* of testimony or documentation to the effect that a conviction was entered upon Jaramillo's guilty plea.

The State contends that Trooper Purdy's testimony and the exhibits introduced through his testimony provide sufficient circumstantial evidence that Jaramillo was convicted of that offense in 1998. We cannot agree. In a different setting, our supreme court has addressed the question of "what constitutes 'acceptance' of a guilty plea"? *State v. Daniels,* 680 N.E.2d 829, 832 (Ind.1997). In *State v. Daniels,* the court rejected the assertion that proof that a guilty plea was entered and taken under advisement is proof that a conviction resulted therefrom. In fact, the court did so on facts that are more supportive of the ruling the State seeks here than are present in the instant case. In *Daniels,* the defendant submitted a signed guilty plea form. After conducting a hearing on the motion, the court accepted the written form, stating, "I'll take the motion to enter a plea of Guilty under advisement, pending your pre-sentence report[.]" *Id.* at 831. Notwithstanding the court's statement that it was taking the plea under advisement, the judge signed and dated a form which stated,

> The Court having personally addressed the defendant and having advised him of his rights and having determined that he understands the same and has entered his plea voluntarily and not by reason of any promises, force or threats having been made to him, *now accepts the defendant's plea of guilty* and orders this Motion and Certificate of Counsel to be made a part of the transcript of the entire proceedings of the guilty plea hearing and sentence herein.

*Id.* (emphasis supplied). The trial court subsequently rejected the plea agreement and the matter proceeded to trial. The defendant argued on petition for post-conviction relief that the aforementioned facts constituted an acceptance of his plea, which could not thereafter be revoked. The post-conviction court agreed and granted the defendant's PCR petition. The State appealed.

The question of the effect of a signed plea agreement, sans judgment of conviction, was placed squarely before the supreme court in *Daniels.* In its decision, the supreme court clearly conveyed its view that the acceptance of a signed plea agreement form is not tantamount to entry of judgment on that plea. That is certainly the case when the trial court indicates only that it is taking the plea under advisement. As we have learned in *Daniels,* it is even the case when the court signs a form stating that it "now accepts the defendant's plea of guilty." *Id.* Thus, we are left to conclude that a signed guilty plea form, without more, is not adequate to prove that a judgment of conviction was subsequently entered in that cause.

In the instant case, the evidence was sufficient to prove that Jaramillo was charged with an offense under I.C. § 9–30–5. It was sufficient to prove that he entered a guilty plea with respect to that charge, and that the trial court took the plea under advisement. There was, however, absolutely no evidence presented to the jury concerning the fate of Jaramillo's guilty plea or, ultimately, the resolution of the charges against him. In short, the evidence proving that the trial court took Jaramillo's plea under advisement was insufficient to prove that judgment of conviction was entered thereon. Therefore, the

evidence was insufficient to prove the predicate conviction necessary to enhance the OWI-causing-death offense. We must remand this case with instructions to vacate Jaramillo's conviction for OWI causing death as a class B felony and to enter instead a judgment of conviction for OWI causing death as a class C felony.

### 2.

■ Jaramillo contends that the evidence was insufficient to support the determination that he is a habitual offender.

In order to obtain a habitual offender finding, the State was required to prove beyond a reasonable doubt that Jaramillo "had accumulated two (2) prior unrelated substance offense convictions." I.C. § 35–50-2–10. The State supported the habitual substance offender charge by alleging the minimum two previous substance-abuse offenses. One of those was the 1998 conviction. We have already determined that the evidence was insufficient to prove that conviction. Because a habitual substance offender finding must be supported by proof of two valid predicate offenses, the failure of proof regarding the 1998 conviction vitiates the habitual offender determination. Therefore, the habitual substance offender determination must be reversed.

### 3.

■ We have reduced the OWI causing death conviction from a class B felony to a class C felony, and have reversed the habitual offender determination. The State contends that it may retry Jaramillo on the enhancement of the OWI charge, and may seek again to obtain a habitual substance offender determination based upon the facts of the present case. Jaramillo contends that double jeopardy principles bar a retrial of those issues.

We note first that Jaramillo does not present any argument under the Indiana Constitution, but instead confines his argument to the United States Constitution. As a result, any argument arising under the Indiana Constitution is waived. *Jackson v. State*, 735 N.E.2d 1146 (Ind.2000). Therefore, we confine our analysis to federal double jeopardy jurisprudence.

Both parties acknowledge that the resolution of this issue hinges upon a United States Supreme Court opinion that addressed this question. In *Monge v. California*, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998), the Court was asked to decide whether the Double Jeopardy Clause barred reprosecution of the question whether the defendant (Monge) had a prior conviction. The case arose in the context of California's "three-strikes" law. Pursuant to the version of that law then in effect, among other things, if the instant offense was preceded by a serious felony offense, the defendant's sentence on the instant offense would be doubled. In a bifurcated trial, a jury first determined that Monge was guilty of the charged offense. Then, "the truth of the prior conviction allegations was argued before the court." *Id.* at 725, 118 S.Ct. 2246. The trial court found that the allegation concerning the prior convictions was true, and imposed an enhanced sentence upon that finding. Monge appealed, and the California Court of Appeals requested briefing on the question whether sufficient evidence was presented to prove the prior conviction. In response, the State conceded that it had not offered sufficient evidence to prove the predicate offense at the bifurcated proceeding, but requested another opportunity to prove the allegation on remand. The matter eventually was appealed to the United States Supreme Court. Once it was there, the Justices' attention was focused on the Court's opinion in *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). In *Bullington*, the Court held "that a capital

defendant who had received a life sentence during a penalty phase that bore 'the hallmarks of [a] trial on guilt or innocence' could not be resentenced to death upon retrial following appeal." *Monge v. California,* 524 U.S. at 726, 118 S.Ct. 2246 (internal quotation in original, but unattributed). The Court took the occasion of *Monge* to clarify whether the *Bullington* holding applied in noncapital proceedings.

Central to the Court's double jeopardy analysis was the distinction between, on one hand, elements of a crime and, on the other hand, factors considered in sentencing. A majority of the Court rejected Justice Scalia's dissenting view that prior convictions are *elements* of a recidivism enhancement. In that regard, the Court noted, "An enhanced sentence imposed on a persistent offender thus 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" *Monge v. California,* 524 U.S. at 728, 118 S.Ct. 2246 (quoting *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)). Lest there be any doubt that the issue before the Court in *Monge* is the same one before us in the instant case, we reproduce the following from *Monge:*

> Petitioner contends that the rationale for imposing a double jeopardy bar in *Bullington* ... applies with equal force to California's proceedings to determine the truth of a prior conviction allegation. Like the Missouri capital sentencing scheme at issue in *Bullington,* petitioner argues, the sentencing proceedings here have the "hallmarks of a trial on guilt or innocence" because the sentencer makes an objective finding as to whether the prosecution has proved a historical fact beyond a reasonable doubt. The deter-

mination whether a defendant in fact has qualifying prior convictions may be distinguished, petitioner maintains, from the normative decisions typical of traditional sentencing. In petitioner's view, once a defendant has obtained a favorable finding on such an issue, the State should not be permitted to retry the allegation.

*Monge v. California,* 524 U.S. at 731, 118 S.Ct. 2246 (internal quotes in original, but unattributed). As the foregoing reflects, the *Monge* decision is squarely on point with the matter under consideration here. On this issue, the court specifically held, "We conclude that *Bullington*'s rationale is confined to the unique circumstances of capital sentencing and that the Double Jeopardy Clause does not preclude retrial on a prior conviction allegation in the non-capital sentencing context." *Id.* at 734, 118 S.Ct. 2246. It would seem, therefore, that *Monge* settled the question whether the Double Jeopardy Clause of the United States Constitution permits retrial of the existence of a predicate offense where the evidence has been deemed insufficient by a trial or appellate court: it does not.

Jaramillo counters that subsequent rulings of the Supreme Court signal a sea change on that question. Most notably, Jaramillo contends that *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998),[3] *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) combine to effectively overrule *Monge.* We applaud the quality of the argument presented on Jaramillo's behalf in this regard. In the end, however, a synthesis of those decisions simply does not present a compelling enough case to permit this court to take

---

**3.** We note that *Almendarez–Torres* was decided before *Monge.*

upon itself a task that the Supreme Court has thus far refrained from undertaking, viz., announcing that *Monge* is a dead letter. We note in this regard that the Court was both deeply divided and fragmented in *Monge, Almendarez–Torres, Apprendi,* and *Ring.* In each case, there were multiple concurring and dissenting opinions reflecting various viewpoints on the various sub-issues, as well as the main question itself. Utilizing what might fairly be described as a "cut-and-paste" approach, Jaramillo does a creditable job of cobbling together from those various expressions of viewpoint a majority of five Justices that would vote to overturn *Monge.* Jaramillo's argument is plausible, but by no mean unassailable. Accepting the argument requires a fair amount of speculation on our part concerning the way certain Justices would assess particular components of the analysis Jaramillo presents. We would prefer to take the guesswork out of the exercise altogether, and so will leave it to the Supreme Court to decide for itself whether a new view on that question should carry the day.

Therefore, pursuant to *Monge,* the Double Jeopardy Clause of the United States Constitution does not bar the State from seeking again to establish the requisite predicate offense to support enhancement of the OWI-causing-death offense, and to establish predicate offenses that would support a habitual substance offender finding.

4.

■ The trial court ordered Jaramillo to pay restitution to the following parties in the following amounts: $17,584.30 to Assure Care; $9566.10 to Margaret Pocock; and $7557 to Unum Life Insurance Company of America. Jaramillo contends the trial court erred in its order of restitution.

■ Ind.Code Ann. § 35–38–2–2.3(a)(5) (West, PREMISE through 2003

1st Reg. Sess.) authorizes courts to order a person convicted of a criminal offense to pay restitution or reparation to the victim. According to that provision, "[w]hen restitution or reparation is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance." *Id.* The purpose behind an order of restitution is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victim caused by the offense. *Carswell v. State,* 721 N.E.2d 1255 (Ind.Ct.App.1999). When restitution is ordered as a condition of probation, the trial court must assess the defendant's ability to pay in order to prevent an indigent defendant from being imprisoned because of his or her inability to pay. I.C. § 35–38–2–2.3; *Ladd v. State,* 710 N.E.2d 188 (Ind.Ct.App.1999). Such an order must fix the amount of restitution, which may not exceed what a person will be able to pay, as well as the manner of performance. *Bailey v. State,* 717 N.E.2d 1 (Ind. 1999). Whether to order restitution is committed to the trial court's discretion, and we will reverse such an order only upon a showing that an abuse of discretion occurred. *Antcliff v. State,* 688 N.E.2d 166 (Ind.Ct.App.1997).

We note that Jaramillo does not challenge the validity of the amounts of the three restitution orders entered against him by the trial court. Although it is not entirely clear, it appears also that he does not challenge the determination that he will be able to pay the indicated amounts when he is released on probation. Rather, we understand Jaramillo's complaint to be that the trial court did not specify the manner of performance with sufficient clarity, to wit:

The order of probation states restitution is to be paid within six months, but

neither it nor the restitution orders fix payment in periodic amounts. Any expectation that Jaramillo could pay the full amount of restitution in one payment is unrealistic given his limited ability in English, employment skills as a general laborer and lack of a bank account or other assets. The cause should be remanded with an order for the trial court to specify the manner in which Jaramillo will pay restitution.

*Appellant's Brief* at 23. Therefore, we will confine our review to the question whether the trial court's order is valid with respect to the manner of performance.

Jaramillo is correct in observing that the restitution order is lacking any details concerning the form payment is to take. Although identifying the recipients and setting the amounts owed to each, the restitution order fails to provide guidance as to how Jaramillo is to pay those debts. By our calculation, Jaramillo will owe a total of $34,707.40 to the three payees, and the order specifies that it is "due within 6 months or as ordered by the court." *Appellant's Appendix* at 11. There being no contrary indication in the restitution order, the order must be interpreted as providing that full payment is due within six months of Jaramillo's release on probation. In view of the facts that Jaramillo works as a laborer and does not speak English as his first language, such paucity of details concerning the manner of payment results in a restitution order that is unacceptable. We therefore remand with instructions to set the manner of performance regarding the payment of the several restitution orders after considering Jaramillo's ability to pay. *See Bailey v. State*, 717 N.E.2d 1.

In summary, we affirm Jaramillo's conviction of operating while intoxicated causing death, but reverse the enhancement of that offense from a class C felony to a class B felony. We also reverse the deter-

mination that Jaramillo is a habitual substance offender. We note also that the Double Jeopardy Clause does not bar reprosecution of the enhancement of the underlying offense from a class C felony to a class B felony, nor does it prevent the State from seeking again to establish that Jaramillo is a habitual substance offender. Finally, the order of restitution is conditionally affirmed, but remanded with instructions to issue an order setting out the manner of payment.

Judgment affirmed in part, reversed in part, and remanded with instructions.

SULLIVAN, J., and RILEY, J., concur.