**Jeffrey A. GRAHAM, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 03A04–0712–CR–668.

Court of Appeals of Indiana.

July 24, 2008.

Transfer Granted Sept. 18, 2008.

Donald J. Dickherber, Columbus, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Jeffrey A. Graham appeals his convictions for Criminal Recklessness,[1] a class D felony, Resisting Law Enforcement,[2] a class A misdemeanor, and Criminal Mischief,[3] a class A misdemeanor. Specifically, Graham argues that (1) insufficient evidence was presented at trial to sustain his conviction for resisting law enforcement; (2) his convictions for criminal mischief and criminal recklessness violate the prohibition against double jeopardy contained in the Indiana Constitution; and (3) the trial court erred when it ordered him to pay restitution without inquiring into his ability to pay or fix a manner of payment. We find that the State presented sufficient evidence to support Graham's conviction for resisting law enforcement and that his convictions for criminal recklessness and criminal mischief do not violate the prohibition against double jeopardy. However, as the State acknowledges, the trial court did not inquire into Graham's ability to pay or fix a manner of payment for the restitution; thus, we reverse the restitution order and remand with instructions contained herein.

---

**1.** Ind.Code § 35–42–2–2(c)(2).

**2.** Ind.Code § 35–44–3–3(a)(11).

## FACTS

On December 14, 2005, Graham got into an argument with Debbie Sharp and her boyfriend, Charles Baker, at Debbie's home. During the disagreement, Graham threw a shoe and broke a window. The tussle moved to the yard, and Graham attempted to hit Debbie with his bicycle and punch her several times. Graham eventually left and went to his nearby home.

Adam Sharp, Debbie's son, was shopping at a dollar store in Columbus when he encountered his teenage sister. Sharp's sister told him that a window in Debbie's home had been broken during an altercation. Sharp .drove his truck to Debbie's home and spent approximately forty-five minutes fixing the window. After Sharp left Debbie's home, he drove past Graham's home numerous times. Graham testified at trial that he saw Sharp driving past his house and Sharp attempted to run him over with his truck when Graham tried to confront him. At that point, Graham reentered his house, removed the trigger lock from a loaded twelve-gauge shotgun, and went back outside. Graham admitted at trial that he intended to use the shotgun against Sharp because "I wanted to make absolutely certain that I made Mr. Sharp sure that I was not gonna have this." Tr. p. 396.

Graham stood behind a tree in his yard and waited for Sharp to drive past. When Sharp drove past the house, he saw Graham step out from behind the tree and fire the shotgun while yelling, "I got you now, you son of a * * * * *." *Id.* at 209–10. The shotgun blasts splintered Sharp's vehicle's turn signal and damaged the front

---

**3.** Ind.Code § 35–43–1–2.

bumper. Sharp hunched behind the steering wheel and accelerated his truck in an attempt to escape. At trial, Graham testified that he fired a total of three shots at the vehicle from approximately six to eight feet away and that he was "reasonably sure" that he hit the vehicle. *Id.* at 397–98.

Sharp drove to a nearby service station and called the Columbus Police Department. After speaking with Sharp, officers went to Graham's home, but the house was dark and Graham did not answer when police officers knocked. Deputy Chief Curt Beverage stationed officers around the house and summoned the police department's SWAT team. A SWAT negotiator eventually contacted Graham on the telephone and Graham agreed to exit the house. When Graham exited the house, he refused to comply with the officers' repeated requests to raise his hands. As Graham shouted profanities and turned to reenter the house, an officer fired a "bean bag" into Graham's upper thigh to subdue him. Graham continued to ignore commands to put his hands in the air, and the officers fired three more rounds. When Graham finally fell to the ground, the SWAT team officers grabbed him and carried him from the porch. Graham refused to allow the officers to handcuff him, despite numerous commands that he place his hands behind his back. Eventually, the officers were able to place Graham in handcuffs.

On December 20, 2005, the State charged Graham with class D felony criminal recklessness, class A misdemeanor resisting law enforcement, and class A misdemeanor criminal mischief. A jury trial began on September 27, 2007, and the jury found Graham guilty as charged. The trial court held a sentencing hearing on October 24, 2007, and sentenced Graham to thirty-two months imprisonment for the criminal recklessness conviction and one year for each of the two misdemeanor convictions, ordering the sentences to be served consecutively. The trial court suspended the sentences for the misdemeanor convictions and ordered Graham to be placed on probation for eighteen months after his incarceration. As a term of Graham's probation, the trial court ordered him to pay restitution in the amount of $1,700 to Sharp. Graham now appeals.

## DISCUSSION AND DECISION

### I. Resisting Law Enforcement

Graham argues that the State presented insufficient evidence to sustain his conviction for resisting law enforcement. Specifically, Graham argues that the State presented insufficient evidence that he *forcibly* resisted the law enforcement officers when they were trying to arrest him.

To convict Graham of class A misdemeanor resisting law enforcement, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in the execution of his duties. I.C. § 35–44–3–3. When addressing sufficiency of the evidence challenges, we neither reweigh the evidence nor judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). We consider only the probative evidence and reasonable inferences therefrom that support the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). If there is conflicting evidence, we consider that evidence only in the light most favorable to the judgment. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id.* at 147.

A person forcibly resists " 'when strong, powerful, violent means are used to

evade a law enforcement official's rightful exercise of his or her duties.'" *Guthrie v. State*, 720 N.E.2d 7, 9 (Ind.Ct.App.1999) (quoting *Spangler v. State*, 607 N.E.2d 720, 723 (Ind.1993)). Mere passive resistance is not sufficient to sustain a conviction for resisting law enforcement. *Guthrie*, 720 N.E.2d at 9.

Our Supreme Court interpreted the force requirement in *Spangler*, holding that the forcible element of the crime requires "some form of violent action toward another." *Spangler*, 607 N.E.2d at 724. However, in *Johnson v. State*, we noted that while discussing political expression, our Supreme Court cited *Spangler* and provided that "'an individual who directs strength, power *or* violence towards police officers or who makes a threatening gesture or movement in their direction, may properly be charged with [resisting law enforcement].'" 833 N.E.2d 516, 519 (Ind. Ct.App.2005) (quoting *Price v. State*, 622 N.E.2d 954, 963 n. 14 (Ind.1993) (emphasis in original)). Thus, we held that "until we are instructed otherwise by our Supreme Court, we see no reason to apply what appears to be an overly strict definition of 'forcibly resist' when the facts in *Spangler* established that an individual did no more than passively resist by walking away...." *Johnson*, 833 N.E.2d at 519 (affirming defendant's conviction for resisting law enforcement because he had turned and pushed away with his shoulders, refused to get into the officers' vehicle, and stiffened up, requiring officers to exert force to place him in the vehicle).

Here, when Graham finally exited his house, he refused to put his hands up, requiring the SWAT team officers to fire four "bean bag" rounds at his legs to get him to submit. Tr. p. 280–81, 321, 322. After Graham fell to the porch, the officers grabbed him and carried him into the front yard. *Id.* at 324, 407. However, despite the officers' commands to "give us your hands," Graham "was still not complying even after physically being taken into custody." *Id.* at 281. Eventually, despite Graham's resistance, the officers were able to handcuff him. *Id.*

While Graham argues that the evidence was insufficient to sustain his conviction, we note that he used more force than the defendant whose conviction we upheld in *Johnson.* Graham emphasizes, and the State acknowledges, that one of the officers testified that "it appeared ... [that Graham] cooperate[d] with the officers who were trying to handcuff him." *Id.* at 324–25. However, that officer admitted that she was not one of the officers who attempted to handcuff Graham and, instead, that she immediately entered the house to secure it. *Id.* at 325. Thus, Graham's argument is a request for us to reweigh the evidence and judge the credibility of witnesses—an invitation we must decline when reviewing the sufficiency of the evidence on appeal. Consequently, we conclude that the State presented sufficient evidence for a reasonable factfinder to find Graham guilty of resisting law enforcement.

## II. Double Jeopardy

■ Graham argues that his convictions for criminal recklessness and criminal mischief violate the prohibition against double jeopardy contained in the Indiana Constitution. Specifically, Graham argues that there is a reasonable likelihood that the jury used the same evidence to sustain both convictions and asks us to vacate his conviction for criminal mischief.

■ Article I, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." The "actual evidence test" was first enunciated in *Richardson v. State*, 717 N.E.2d 32, 49–50 (Ind.1999). Under the actual evidence test, "the

Indiana Double Jeopardy Clause is violated when there is a reasonable possibility that the evidentiary facts used to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Bradley v. State*, 867 N.E.2d 1282, 1285 (Ind.2007). "[T]he 'proper inquiry' is not whether there is a reasonable probability that, in convicting the defendant of both charges, the jury used *different* facts, but whether it is reasonably possible it used the *same* facts." *Id.* (emphases in original). To determine what facts were used, we consider the evidence, charging information, final jury instructions, and arguments of counsel. *Goldsberry v. State*, 821 N.E.2d 447, 459 (Ind.Ct.App.2005).

To convict Graham of class D felony criminal recklessness, the State was required to prove beyond a reasonable doubt that, while armed with a deadly weapon, Graham recklessly, knowingly, or intentionally, performed an act that created a substantial risk of bodily injury to another person. I.C. § 35–42–2–2. To convict Graham of class A misdemeanor criminal mischief, the State was required to prove beyond a reasonable doubt that he recklessly, knowingly, or intentionally, damaged or defaced property of another person without the other person's consent and the pecuniary loss was at least $250 but less than $2,500. I.C. § 35–43–1–2.

The gravamen of Graham's argument is that "[t]he State intended to rely on Graham's act of firing at Sharp's vehicle to support both the criminal recklessness and criminal mischief charges." Appellant's Br. p. 27. The State argues that it used evidence of the vehicle damage and the resulting pecuniary loss only to support the criminal mischief conviction. As the

prosecutor noted during closing arguments, "[e]vidence of criminal mischief, well you have the victim's testimony that he took his vehicle and he got an estimate and it's gonna cost around twelve hundred and fifty dollars to repair. That's enough. You don't need more." Tr. p. 475. Turning to the evidence supporting the recklessness charge, the prosecutor argued that "[Graham] told you what he did. He fired at [Sharp] three times with his loaded shotgun. He caused a risk of deadly bodily injury to [Sharp]." *Id.* at 477.

Graham's argument would be much stronger if he had only fired one shot and that shot had hit Sharp's vehicle. Under those circumstances, the jury would certainly have relied upon the same evidence to sustain both convictions. However, Graham fired three shots at Sharp's vehicle—two of which hit the truck and caused property damage and one of which did not. *Id.* at 366–67, 477. Because we do not believe that it is reasonably possible that the jury used the same facts to sustain Graham's convictions for criminal recklessness and criminal mischief, we reject Graham's argument.

### III. Restitution

 Graham argues that the trial court erred when it ordered him to pay $1,700 in restitution but did not inquire *into his ability to pay or set the manner of payment as required by Indiana Code section 35–38–2–2.3(a)(5).*[4] The principal purpose of restitution is to vindicate the rights of society and to impress upon the defendant the magnitude of the loss the crime has caused. *Pearson v. State*, 883 N.E.2d 770, 772 (Ind.2008). Restitution also serves to compensate the offender's victim. *Id.* We review a restitution order for an

---

**4.** Indiana Code section 35–38–2–2.3(a)(5) provides that "[w]hen restitution or reparation is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance."

abuse of discretion. *Davis v. State,* 772 N.E.2d 535, 541 (Ind.Ct.App.2002).

The State initially argues that Graham has waived this argument by not objecting to the restitution order to the trial court. Appellee's Br. p. 10–11. However, after filing its brief, the State filed supplemental authority directing our attention to *Laker v. State,* in which we held that a defendant may challenge a restitution order for the first time on appeal. 869 N.E.2d 1216, 1220 (Ind.Ct.App.2007). Thus, we conclude that Graham has not waived this issue and turn to the merits of his argument.

The State acknowledges that a trial court ordering a defendant to pay restitution as a condition of probation is required to make an inquiry into the defendant's ability to pay and fix a manner of payment. Appellee's Br. p. 12 (citing *Jaramillo v. State,* 803 N.E.2d 243, 250 (Ind.Ct.App. 2004); I.C. § 35–38–2–2.3(a)(5)). And the State concedes that no evidence was presented at the sentencing hearing regarding Graham's education, employment, income, or living expenses and the trial court did not inquire into Graham's ability to pay restitution or fix a manner of payment. Appellee's Br. p. 12; Appellant's App. p. 130 (probation order form ordering Graham to pay $1,700 in restitution but leaving the manner of payment line blank). Thus, we reverse the restitution order and remand with instructions that the trial court determine Graham's ability to pay and fix a manner of payment.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

MATHIAS, J., and BROWN, J., concur.